ANTHONY LA ROSA, BY HIS NEXT FRIEND STEFANO LA ROSA, RESPONDENT, v. ARMAND F. NICHOLS, APPELLANT.

Argued June 21, 1918—Decided November 18, 1918.

1. The doctrine of equitable estoppel is not exclusively of equitable cognizance, for, although the creature of equity and depending upon equitable principles, it is enforced alike by courts of law and equity.

2. The contracts of infants are not absolutely void, but only voidable; and if a youth under twenty-one years of age, by falsely representing himself to be an adult, which he appears to be, for the purpose of inducing another to enter into a contract with him, and thereby, through such representation and appearance, the other party is led to believe that such infant is an adult and makes a contract with him, the benefit of which he obtains and retains, then in a suit on that contract, the minor will not be permitted to set up the privilege of infancy, because, by his fraudulent conduct, he has estopped himself from so pleading; and this in a court of law as well as in a court of equity.

On appeal from the Supreme Court, whose opinion is reported in 91 *N. J. L.* 355.

For the appellant, *Louis E. Stern.*

For the respondent, *Ewart & Siracusa.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The defendant-appellant, a garage keeper in Atlantic City, stored the automobile of the plaintiff, furnished supplies for, and did work upon it, at the special instance and request of the plaintiff, who owned the machine. The bill thus contracted amounted to $74.49, and default being made in its payment defendant retained possession of the automobile, asserting a lien under the act for the protection of garage keepers and automobile repairmen. *Pamph. L.* 1915, *p.* 556. Plaintiff brought replevin in the Atlantic Circuit Court, setting up that he was an infant twenty years

of age; that he repudiated his contract to pay for gasoline and storage, supplies, accessories, and for repairs to his automobile, and demanded possession of it free from any lien claimed by the defendant. The defendant answered and set up that the plaintiff represented himself to be of full age when he engaged the defendant to store his automobile, &c.; that the plaintiff received the benefit of the storage, work and labor and materials furnished; that the same were necessary to the plaintiff in order to operate his machine in and about his business of a jitney driver, and that the prices charged were reasonable. The case was submitted to the court without a jury. The judge found in favor of the plaintiff and against the defendant, and judgment was thereupon entered, with costs. Appeal was taken to the Supreme Court and the judgment was there affirmed. From the judgment entered upon that affirmance appeal has been taken to this court.

The case was tried in the court of first instance upon an agreed state of facts, as follows: That the amount claimed by defendant is due and owing to him from plaintiff; that at the time of storing the car and purchasing the supplies, &c., plaintiff was an infant and would not be of age until October, 1917 (the items running over a period from September 16th, 1916, to January 17th, 1917); that at the time mentioned plaintiff had the appearance of being of full age, and then, and prior thereto, represented himself to defendant as being of full age, and before that time executed a chattel mortgage to defendant on the automobile, and, in the acknowledgment of the execution of the mortgage, recited the fact that he was of full age; that plaintiff held a state license to drive an automobile in Atlantic City for hire—to operate a car commonly called a "jitney;" that the plaintiff's father, who is acting as his next friend in this suit, knew that the plaintiff was engaged in the business of operating an automobile for hire and that the car was stored in the defendant's garage and that plaintiff was purchasing gasoline, &c., from defendant, and consented thereto; that plaintiff lived with his father and irregularly contributed money to his household.

If this suit were in the Court of Chancery the plea of infancy in the circumstances of this case would not be tolerated. *Parker* v. *Hayes,* 39 *N. J. Eq.* 469; *Pemberton Building and Loan Association* v. *Adams,* 53 *Id.* 258. In the former case it was held by Vice Chancellor Van Fleet that if an infant, entitled to a sum of money on attaining twenty-one years of age, induces his trustee to pay it to him in advance of that time by fraudulently representing himself to be of full age, he will, in equity, be bound by the payment, although he would not be at law. (See *pp.* 478, 479.) And, in the latter case, Vice Chancellor Bird held that infancy is no defence to a suit on a contract, the consideration of which was money advanced to the infant upon his falsely representing himself to be of age when the representation is relied upon by the lender; and that a court of equity will not permit the plea of infancy to prevent the enforcement of a contract for a loan of money without a return of the loan, and this irrespective of fraud. I understand the Vice Chancellor's assertion (at *p.* 259) that the law will not in such circumstances allow a fraud-doer to protect himself under the plea of infancy, to refer to the law administered in courts of equity. The authorities he cites show this. Parker *v.* Hayes went to the Court of Errors and Appeals, and there Mr. Justice Reed, writing the opinion for that court, said the equitable rule was fully and correctly stated in the opinion of the learned Vice Chancellor. *Hayes* v. *Parker,* 41 *N. J. Eq.* 630, 632.

Counsel for plaintiff urges that neither in Parker *v.* Hayes nor Pemberton Building and Loan Association *v.* Adams did the Court of Chancery say that infants were bound by their contracts, but that enforcement of the contracts was denied on the ground of estoppel—equitable estoppel. But this doctrine is not now one of exclusively equitable cognizance; for, as this court, in *Central Railroad Co.* v. *MacCartney,* 68 *N. J. L.* 165, speaking by Mr. Justice Pitney (at *p.* 175), said, the doctrine of equitable estoppel, although the creature of equity and depending upon equitable principles, is recognized and enforced alike by courts of law and equity.

Two cases decided by our Supreme Court were cited as authority for that court's decision in the case at bar, namely, *Woolston* v. *King,* 3 *N. J. L.* 599, and *Hall* v. *Acken,* 47 *Id.* 340. In the former the suit was on a promissory note and the defence set up was that the defendant was an infant when the note was given. The court held that it is the real or supposed incapacity of mind in an infant to make judicious contracts that the law renders invalid his bargains. And the latter case was on a mechanics' lien claim against the builder, who contracted the debt, and against the owner, who was an infant, to charge his land with the lien. The court held that there could be no lien on an infant's land under the Mechanics' Lien law, for the lien thereby given (except in a certain instance which is immaterial here) is incident only to a liability to pay, which a minor is not competent to incur for building upon his land.

That the contracts of infants are voidable by them generally must be conceded; but there is nothing in either of the cases just mentioned which suggests that they fell under the doctrine of equitable estoppel, nor that that doctrine cannot be invoked against an infant in a proper case—even one at law.

In *Hayes* v. *Parker,* 41 *N. J. Eq.* (at *p.* 631), there is, however, an observation that at law a person within the age of twenty-one is conclusively presumed to be unfitted for business, and that every contract into which he enters is to his disadvantage, and that he is incapable of fraudulent acts which will estop him from interposing the shield of infancy against its enforcement. But this is *obiter dictum.* The case before the court was one in equity, calling for the application of equitable principles, and the observation concerning a different situation at law was, as stated, *obiter dictum.* And this is true of the similar observation of Vice Chancellor Van Fleet in the same case. We are, therefore, at liberty to adopt in the case *sub judice* the rule which we think is most consonant with reason and therefore the better law.

The stipulation in the record that the plaintiff's father was aware of his son's transactions with defendant and consented thereto, and that the boy, who lived with his father, irregu-

larly contributed money to the household, was apparently intended to import the doctrine of emancipation into the case, which, if found as a fact, would doubtless have entitled the defendant to prevail; for this court said, in *Costello* v. *Prospect Brewing Co.,* 52 *N. J. Eq.* 557 (at *p.* 560), that it is clear that a father may give an infant his time or authorize him to make contracts in his own name and receive pay therefor, and in such case the minor may sue and recover his wages.

Defendant in this case pleaded that what was furnished to plaintiff were necessaries, and that therefore he was liable. In the view I take of this case a decision of these questions of emancipation and necessaries is not called for. I prefer to put my vote to reverse solely on the ground of estoppel *in pais* —equitable estoppel. It seems anomalous, indeed, that youths of sufficient age and capacity, although less than twenty-one years old, may be convicted of crime, and be held liable for their torts, and yet not be liable on their contracts when apparently of sufficient capacity to make them, and when they procure their making by fraud.

Let it be remembered that the contracts of infants are not absolutely void, but only voidable. An illuminating discussion of this question will be found in the opinion of Mr. Justice Stanley, in the Supreme Court of New Hampshire in *Hall* v. *Butterfield* (1879), 59 *N. H.* 354. At *p.* 357, he quotes Lord Mansfield as follows: " 'Great inconveniences must arise to others if infants were bound by no act. The law, therefore, at the same time that it protects their imbecility and indiscretion from injury through their own imprudence, enables them to do binding acts for their benefit * * *. A third rule, deducible from the nature of the privilege that is given as a shield and not a sword, is, that it never shall be turned into an offensive weapon of fraud or injustice.' " And the learned judge further says (at *p.* 358): "* * * no reason appears why the wise and just principle enunciated by Lord Mansfield should not be given its full force, and the rights and obligations of lunatics, persons *non compos mentis,* drunkards when in such a state as to be en-

tirely bereft of reason, and infants be placed on the same ground. The obligation to account only for the benefit actually received secures ample protection from fraud and imposition, and at the same time prevents the privilege from being used to perpetrate fraud. It prevents their disability from being not 'their protection merely, but an extraordinary legal ability to rob others. Not a shield but a sword; not a mere legal incapacity to be plundered by their fellow-men, but a vast capacity to plunder them with impunity.'" And, further (at *p.* 359): "If benefit obtained by the infant is the test in one case, why not make it the test in all cases? \* \* \* The true rule is, that the contract of an infant or lunatic, whether executed or executory, cannot be rescinded or avoided without restoring to the other party the consideration received, or allowing him to recover compensation for all the benefit conferred upon the party seeking to avoid the contract. The question whether the infant has received a benefit,—like the question of what are necessaries, and what sum the infant ought to pay for them, or the question of negligence or ordinary care, and other similar questions—is one of mixed law and fact. No uniform rule can be established. \* \* \* In no two cases are we likely to find the same facts; and it must always be for the trier to apply the law to the facts and determine whether the infant has been benefited and to what extent."

As applied to the facts in the case at bar, the law, as I view it, is, that if a youth under twenty-one years of age, by falsely representing himself to be an adult, which he appears to be, for the purpose of inducing another to enter into a contract with him, and, thereby, through such representation and appearance the other party is led to believe that such infant is an adult, and makes a contract with him, the benefit of which he obtains and retains, then, in a suit on that contract, the minor will not be permitted to set up the privilege of infancy, because by his fraudulent conduct he has estopped himself from so pleading; and this in a court of law as well as in a court of equity.

In the case at bar there were no disputed facts, and the false pretense—that is, the fraud of the infant, was admitted, and, therefore, the judge's decision, in my opinion, should have been for the defendant. I shall, therefore, vote to reverse.

The judgment will be reversed, with costs.

SWAYZE, J. (concurring). I find myself unable to concur in the reasoning of the opinion. My vote to reverse rests on the ground that the parties have stipulated that the amount claimed by the defendant is due and owing to him from the plaintiff. This is legally possible, notwithstanding the plaintiff's infancy, and must, therefore, be accepted as a fact. It is conclusive of the controversy.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, SWAYZE, TRENCHARD, BERGEN, MINTURN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 11.