OTIS WHITLOW, Plaintiff in Error, v. HARDIN COUNTY, TEN-
NESSEE, Defendant in Error.

Western Section. November 28, 1930.

Petition for Certiorari denied by Supreme Court, May 14, 1931.

P. M. Harbert, of Savannah, for appellant.
Ross & Belew, of Savannah, for appellee.

SENTER, J.   The parties will be referred to as in the court below, Otis Whitlow, plaintiff, and Hardin County, Tennessee, defendant.

The plaintiff sued Hardin County for the value of land alleged to have been taken by the county as a right of way for State Highway No. 15. The declaration avers in substance that the defendant appropriated a strip of land across the lands of plaintiff located in Hardin County, which land was taken for right of way for the State Highway No. 15, without condemnation proceedings and without dedication upon the part of plaintiff, and that the highway had been constructed on the right of way so appropriated. The declaration avers that the strip of land taken is about 2000 feet in length, and 60 feet in width, for a part of the distance, and about 900 feet in length and about 200 feet in width through a creek bottom portion of the land taken. The declaration further avers that the defendant took possession of the right of way and appropriated same to its own use as a public highway or road, and is now using and enjoying the same "as one of its public highways

or roads, the same being State Aid Road No. 15, without the consent of plaintiff and without proceedings for the condemnation thereof, and has not paid to the plaintiff any consideration or compensation therefor of any kind or character, and is now, and has been since said wrongful entry and appropriation in the exclusive possession of all said lands."

The declaration sets out with considerable detail the damages resulting to plaintiff by reason of the alleged wrongful taking of the right of way in question across his lands; the building of a high levee and making large bar pits along the sides of the road, with some resultant overflows from the creek.

The declaration admits that the suit·was not brought within twelve months from the date the land is alleged to have been taken for said purposes, but sets out, and avers, that the defendant is estopped from denying liability and from pleading the statute of limitations in bar of the action for the alleged reason that before the twelve months period had run the defendant was negotiating with plaintiff through its Quarterly County Court and certain committees appointed by the Quarterly County Court for a settlement and adjustment with plaintiff and other land owners whose lands had been similarly taken for said purpose, and with the view of preventing the expense of a suit being brought by plaintiff, and that these negotiations and repeated actions ·of the County Court in appointing committees to view the premises and to assess the·damages with assurances that the matter could and would be adjusted without suit induced the plaintiff to delay beginning his suit until after the twelve months statute of limitations expired.

The defendant filed a demurrer to the declaration, which demurrer was overruled by the court, whereupon the defendant filed several pleas to the declaration. By several of the pleas the averments of the declaration are denied, and are properly to be classed as the general issue, and also a special plea by which the statute of limitations is specially pleaded. Replications were not filed·to the special pleas, nor was judgment asked by the defendant upon the failure of the plaintiff to file replications. The case went to trial upon the declaration and the pleas. The declaration recognized that the suit was not commenced within twelve months from the date of the alleged wrongful taking of the land, but, as above stated, the declaration averred that the failure to institute the suit within twelve months was due to the conduct of the defendant in giving repeated assurances that the matter could and would be adjusted and satisfactorily settled without suit, and that this conduct continued for several months after the twelve months statute had expired, and that the failure of plaintiff·to sue within the

twelve months statutory period was due to the reliance of plaintiff upon the assurances of the Quarterly County Court of Hardin County and its conduct in continuing the negotiations and the appointment of committees by the County Court seeking an adjustment without litigation.

This tendered an issue on the subject of the statute of limitations, and the special plea of the statute of limitations by the defendant amounted to a denial of the averments of the declaration on that subject, and the denial that the action was not barred by the statute, and a denial that the defendant was estopped to plead the statute of limitations.

At the conclusion of plaintiff's proof the defendant made a motion for a directed verdict in its favor. This motion was sustained by the learned trial Judge, and the suit was dismissed at the cost of plaintiff. A motion for a new trial was made by plaintiff, which motion was likewise overruled, and to the action of the court in overruling his motion for a new trial, and in rendering judgment against the plaintiff for the cost and dismissing the suit, plaintiff has appealed in the nature of a writ of error to this court, and the appeal has been duly perfected and errors assigned.

The assignments of error are numerous, and we deem it unnecessary to set out and dispose of the several assignments separately.

However, we will separately dispose of the first assignment of error, which assignment is directed to the action of the court in refusing to permit the plaintiff, before the trial of the suit, to amend his declaration by adding a second count. The proposed amendment to the declaration as the second count thereto, averred in substance that the County Court had appointed a special committee to adjust and settle the question of damages with plaintiff for the right of way in question, and that said committee, regularly appointed and with full authority to act, proposed to pay to plaintiff for the actual land taken, without incidental damages, the sum of $650, and that plaintiff accepted said proposition and agreed to waive any damages or claim for incidental damages and accept the sum of $650 in full settlement, and that this agreement was made by plaintiff and the committee appointed by the County Court to make said settlement, and constituted a promise to pay to plaintiff said sum, and that subsequently the County Court refused to pay the amount so agreed upon, and the said proposed amendment sought a recovery on the promise to pay said amount in settlement. The learned trial judge declined to permit this amendment to the declaration on the theory that it constituted a new cause of action inconsistent with the cause of action as set out in the declaration as originally filed.

We are of the opinion that the court was not in error in disallowing the proposed amendment. The suit as originally filed proceeded upon the theory that the county had wrongfully and unlawfully appropriated the strip of land in question for a right of way for road purposes, and that plaintiff was entitled to recover the value of the property so taken. The proposed amendment set up an entirely new cause of action, and was in effect a suit to recover on a promise to pay, which promise and contract had been breached, and which promise was a different transaction and sustained no relation to the cause of action as originally sued upon. However, in view of all the evidence heard on the trial of the suit, it clearly appears that all of the parties understood that the committee was not authorized to make the proposed settlement final and binding on the county, but that the committee would report back to the County Court and that before the proposed settlement would be binding on the county it would require the action of the County Court to confirm, ratify and approve the report of the committee. In this view of the case it becomes immaterial that the motion to amend was overruled, for it is clear from the record that the facts, undisputed, would not entitle plaintiff to a recovery under the proposed amendment.

The learned trial judge, in acting on the motion of defendant for a directed verdict in its favor, and in sustaining the same, took the view that the evidence did not sustain the averments in the declaration to the effect that the property in question had been taken by the county for highway purposes, but that the evidence showed that the land taken for right of way purposes was taken by the State Highway Department, and had been used exclusively by the State Highway Department as a State maintained road, and over which the county had no control, and that the county had not taken the right of way in question, and had never appropriated the same for road purposes, but that the taking of the property, and the use of the same for highway purposes, was exclusively the act of the State Highway Department, and hence the county would not be liable. The learned trial judge took the further view that the action had been barred by the statute of limitations of twelve months, and that the plaintiff in delaying instituting the suit under the facts as shown by the record, did so at his peril, and that the county was not estopped from pleading and relying upon the statute of limitations.

Appellee, in his reply brief to the assignments of error, relies upon other propositions for an affirmance of the judgment, which will be referred to and discussed later in this opinion.

It is urgently insisted by appellee that under the Acts of the Legislature of 1917 and 1919, the county cannot be held liable in this action for the value of the right of way taken and appropriated by the state for the building of a highway by the state as a state highway and to be state maintained. To this contention we cannot agree. This question was before the court and discussed in the case of State Highway Department v. Mitchell's Heirs, 142 Tenn., at page 70, wherein it is said:

"As hereinbefore indicated, proceedings herein will be according to the general condemnation laws, except as they are modified by the Acts of 1917 and 1919. Compensation will be assessed and a judgment against the county obtained, for such a judgment is only authorized by Section 5 of Chapter 74, of the Acts of 1917. The same section enacts this: All judgments rendered and other expenses necessarily incurred in such condemnation proceedings shall be paid out of the general funds of the county, in which the expenses are incurred, and standing to the credit of the trustee, on the warrant or voucher of the county judge or chairman drawn under the direction of the Secretary of the Department."

This court, in the case of Carroll County v. Matlock, 7 App. Rep., 564, discusses the question of liability of a county for the value of the land taken without condemnation proceedings for a state built and state maintained highway. After first referring to and discussing the case of State Highway Department v. Mitchell's Heirs, supra, states:

"If, then, in the present case the State Highway Commission had instituted condemnation proceedings, the judgment would have gone against the county of Carroll for the compensation due the owner, Matlock. Applying then the general rule that the party liable in case of condemnation is liable in case of possession taken without condemnation it is immaterial whether possession is taken by the county or by the Highway Commission. In either event the compensation should be assessed against the county."

In the Mitchell's Heirs case the court holds that such condemnation proceedings, where details are not provided for in the Acts of 1917 and 1919, proceeds under the general provisions of Code Section 1844, and under which provisions for condemnation that wherever any corporation, public or private, having the power to condemn, takes possession without condemnation, it is liable to the owner for the same amount that should have been assessed in the condemnation suit.

In Carroll County v. Matlock, *supra,* it was further said by this court:

"The two statutes taken together with the general provisions for condemnation in the Code constitute a scheme by which the obligation is imposed upon the county, in the first instance to secure the right of way for highway purposes. If the county will not act promptly then the state authorities may act, so the work will not be delayed, but in any event the amount due the land owner is assessed against the county, and this result follows if possession is taken without proceedings to condemn."

We are therefore of the opinion that it is immaterial whether the county actually took possession and appropriated the right of way in question, or whether it was taken and appropriated by the State, the fact remains that the owner of the land is entitled to be compensated. Under the general condemnation law in force in this state, the person or corporation, public or private, with power to condemn, but who fails to condemn, is liable to the owner for the property taken, and it is plainly provided by the Acts of 1917 that the county shall pay for the right of way passing through the county built by state and county aid. It is clearly provided that if the county fails to file condemnation proceedings the state may do so and the judgment shall be against the county for damages to the owner. The Acts of 1917 and 1919 both provide a general scheme for the building of State Aid Highways in the several counties of the state, and the cost of obtaining rights of way is put upon the counties. The whole scheme contemplates that the state will make the surveys and locate the routes without concurrence of the County Courts of the respective counties and also without interference and the county is to pay for the right of way. We are therefore of the opinion that the learned trial judge was in error in holding that the county could not be held liable for the taking of the right of way where the right of way was taken by state authorities, and the road constructed thereon by the state authorities, and where the county did not actually appropriate the property.

Appellee makes the further contention that the declaration averred that the defendant, Hardin County, appropriated the right of way in question and took possession of the same and was using the same, and that the proof does not support this contention, and that all the evidence is to the effect that the State Highway Department and not Hardin County appropriated the land in question and took possession of same and that Hardin County did not

have anything to do with the appropriation or the possession of the land involved, and hence there is a fatal variance between the evidence and the averments of the declaration. While the declaration avers that the land in question was taken by the defendant, Hardin County, and upon which a public road of the county was built, the declaration further avers that it was a right of way for State Highway No. 15, and when the declaration is examined it is clearly apparent that the averments proceed upon the theory that it was the obligation of Hardin County to provide the right of way, or to pay the cost of the right of way for the building of State Highway No. 15, which the record shows to be a state and county built highway. Hardin County was required and did issue its bonds to pay its part of the construction of Highway No. 15.

We do not think this contention of appellee can be sustained.

Appellee makes the further contention that the plaintiff failed to prove ownership of the land in question, and contends that this is fatal to plaintiff's case. It is contended by appellee under this proposition that before plaintiff could recover he would have to prove title or ownership of the land taken. In support of this contention appellee cites and relies upon the case of Railway & Light Co. v. O'Fallen, 130 Tenn., 270. In that case it was said:

"The statute says 'the owner of such land' may sue for damages. But how is the owner discovered? Either by proof of title or by proof of actual possession."

The court, on the same subject, said further:

"The section quoted (Shannon's Code, Sec. 1866) gives the right of action to the 'owner of the land.' The plaintiff must show that he is the owner. In such an action, this may be done, as stated, by proof of actual possession at the time the land was entered upon. In the absence of this, there must be proof of title. In the case before us defendants in error proved neither, and their action must necessarily fail."

We conceive the above to be a correct statement of the rule and well supported by authority. However, we think the facts as disclosed by this record not only shows ownership of the land in question in the plaintiff, but there is considerable evidence and every legitimate inference that plaintiff was in the actual possession of the land in question at the time it was appropriated. The plaintiff introduced in evidence a deed covering two of the tracts from which the right of way was taken. He did not produce and introduce in evidence a deed to the third tract over which a part of the right of way ran. He did not have the deed to that tract in his possession, but stated that it was recorded and that he would secure the deed if necessary. It seems, by inadvertence, his at-

torney failed to procure a certified copy of the deed and place it in evidence as he stated at the trial he would do. However, all of that portion of the land included in the right of way for which compensation is sought was repeatedly referred to as the land of plaintiff, and the County Court and its several committees appointed to adjust and settle with plaintiff repeatedly referred to the right of way in question as being on the lands of plaintiff. The committees and the County Court negotiated for several months with plaintiff in an effort to adjust and settle and in so doing referred to the property as the lands of plaintiff. It was also shown that he cultivated the land, and there was certainly much evidence from which the jury could reasonably and properly infer that the plaintiff was in possession of the property as the owner at the time it was appropriated. We do not think that the facts of this case bring it within the rule as announced in Railway & Light Co. v. O'Fallen, supra.

Appellee further contends that plaintiff failed to show by evidence the location and description of the land alleged to have been taken for this right of way, and relies upon the general rule and the statutes of the state in support of the contention that it is incumbent upon plaintiff to show the exact location of the right of way on land taken for the right of way. This property had already been appropriated, and the right of way surveyed and the road constructed, and the evidence does show the width of the right of way and its length across plaintiff's land, and the amount of acreage and the value of the land taken. We think this fully meets the requirements of the law, and definitely locates the land appropriated and now used for highway purposes.

The only other question made which we deem necessary to a proper determination on this appeal is with reference to the bar of the statute of limitations. The learned trial judge, in disposing of the motion for a directed verdict, held that the cause of action was barred by the statute of twelve months from the date of the taking of the property. We are of the opinion that unless the record shows that plaintiff was induced to delay bringing the suit within twelve months after the appropriation of the land by the conduct and representations made by the Quarterly County Court and the County officials of Hardin County, that the action would be barred. We are further of the opinion that the contention of appellant to the effect that an action had been commenced in the County Court of Hardin County, within the twelve months period, cannot be sustained. Appellant makes as one of his contentions that the action is not barred because of the claim made in the County Court for compensation for his land within twelve months,

and that this claim and the consideration given it by the County Court constituted an ''action,'' and cites authorities on a definition of the word ''action.'' We think it clear that the word ''action'' as used in the statute means a suit or proceedings instituted for the enforcement of a demand or debt or a claim.

By Shannon's Code, Sec. 4452, the word ''Action'' as used in the preceding section is defined as follows:

''The word 'Action' in this chapter includes motions, garnishments, petitions, and other legal proceedings in judicial tribunals for the redress of civil injuries.''

In the case of Moran v. Weinberger, 149 Tenn., 537, the definition of the word ''action'' as stated in Vol. 1, C. J., 926, was quoted with approval, as follows:

''The legal or lawful demand of one's rights in the form given by law; an assertion in a court of justice of a right given by law; a suit or process by which a demand was made of a right in a court of justice; a civil proceeding taken in a court of law to enforce a right.''

The record does not disclose that any judicial proceedings were instituted for the enforcement by plaintiff of his right to recover for the value of the land appropriated for this right of way until the institution of this suit. No formal proceedings were instituted in the County Court or any other court prior to the institution of this suit. The mere fact that plaintiff was demanding compensation of the county and that negotiations were being conducted between the county and plaintiff would not constitute an ''action'' for the enforcement of the claim. This contention of plaintiff cannot therefore be sustained.

This brings us to what we conceive to be the controlling and determinative question made on this appeal, and that is, was the plaintiff induced to forbear bringing his suit before the expiration of the twelve months statutory period on account of any conduct by the Quarterly County Court and the several committees appointed by the Quarterly County Court of Hardin County and representations made looking to a probable settlement and adjustment without litigation; and if so, would such conduct and representations operate as an estoppel against the defendant from pleading and relying upon the statute of limitations as a bar to the action? And the further question, can such estoppel be made in a court of law? This question is discussed in Vol. 1, C. J., pages 1118, 1119, under the sub-title of ''Equitable Estoppel,'' wherein it is said:

''As a general rule an estoppel in pais may be set up in actions at law as well as in suits in equity. While as already shown, it had its origin in equity, it was taken over at quite

an early day by courts of law and made adaptable to and applied in legal proceedings.

"(1) To prevent circuity of action, or to obviate the necessity of bringing another proceeding to enforce rights growing out of the same transaction, and, (2) To award relief by a specific reparation, where specific reparation could equitably be had and where it could not, to award restitution in money, equivalent to the damages sustained—and all for the promotion of justice and equity. And it has been frequently held or said that in order to justify a resort to a court of equity it is necessary to show some ground of equity other than the estoppel itself, whereby the party entitled to the benefit of it is prevented from making it available in a court of law."

In 10 R. C. L., Sec. 147, page 841, it is said:

". . . It is now, however, generally held that an equitable estoppel or estoppel in pais, may be enforced in a court of law as well as in equity. . . ."

To this effect are the cases of Cornwall v. Davis, 4 L. R. A., 563; Davis v. Williams, 130 Ala., 530, 30 So., 488, 89 A. S. R., 55; Dickerson v. Ripley County, 6 Ind., 128, 63 Am. Dec., 373; Tracy v. Roberts, 88 Me., 310, 34 Atl., 68, 51 A. S. R., 394; Medley v. German Alliance Ins. Co., 55 W. Va., 342, 47 S. E., 101, 2 Ann. Cas., 99.

It has been held in numerous cases, and by the Supreme Court of Tennessee, that where an infant has fraudulently represented that he was twenty-one years of age and persons were induced to deal with him on that representation, that the infant would be estopped, even in a court of law, to plead his infancy. Among the leading cases on this subject is that of LaRosa v. Nichols, 92 N. J. L., 373, 105 Atl., 201, 6 A. L. R., 412, the first two headnotes being as follows:

"1. The contract of infants are not absolutely void, but only voidable; and if a youth under twenty-one years of age, by falsely representing himself to be an adult, which he appears to be, for the purpose of inducing another to enter into a contract with him, and thereby through such representation and appearance, the other party is led to believe that such infant is an adult and makes a contract with him, the benefit of which he obtains and retains, then in a suit on that contract the minor will not be permitted to set up the privilege of infancy, because by his fraudulent conduct he has estopped himself from so pleading; and this in a court of law as well as in a court of equity.

"2. The doctrine of equitable estoppel is not exclusively of equitable cognizance, for, although the creature of equity and depending upon equitable principles, it is enforced alike by courts of law and equity."

In the early Tennessee case of Barham v. Turberville, 1 Swan, 437, a suit at law, it was held that in an action in trover for the conversion of a slave, that a minor who was present and watched an innocent purchaser buy the slave could not afterwards maintain a suit. It being held that the defendant in the action relied upon the conduct of the infant in making the purchase, and the infant was estopped because of his silent acquiescence and fraud. In that case it was said by the court, after reviewing certain authorities:

"In view of these authorities, as well as upon principle, it seems to us that in a case of actual fraud the principle of estoppel should apply at law as well as in equity, in the circumstances before stated, to protect the title of an innocent purchaser against the action of the party who perpetrated the fraud."

In the case of Merriweather v. Larmon, 3 Sneed, 447, which was an action in ejectment from the Circuit Court of Obion County, and a suit at law, it was held that admissions which had been acted upon by others are conclusive against the party making them, in all cases against them, and the person whose conduct he has thus influenced, whether made in express language to the person himself, or implied from the open and general conduct of the party, may rely upon an estoppel.

In the case of Spears v. Walker, 1 Head, 166, it was held that admissions and declarations as to land boundaries will estop parties· from afterwards claiming otherwise than as previously represented, where the opposite party relies upon such admissions and declarations. These cases recognize that the rule of estoppel, although of equitable origin, will apply in a court of law as well as in a court of equity. While in the cases above cited from the Tennessee court they proceed largely upon actual fraud, or conduct amounting to actual fraud, but we understand the rule to be by a decided weight of authority, both by the text writers and the case law, that the rule of equitable estoppel may be invoked in a court of law where the conditions justify.

We are also of the opinion that the rule of estoppel applies to a county as a quasi corporation. In the case of Putnam County v. Smith County, 129 Tenn., 394, it is said in the first headnote:

"The doctrine of estoppel due to laches and acquiescence

is applicable in certain cases, to a county, as a quasi corporation."

To the same effect are the cases of Putnam County v. White County, 140 Tenn., 19, and Roane County v. Anderson County, 89 Tenn., 258, and Bernard v. Hawkins County, 2 Shann. Cas., 97.

On the question of an estoppel to plead and rely upon the statute of limitations to actions, the rule is thus stated in 37 C. J., 726:

"In a few jurisdictions it is held that a person cannot be barred by an equitable estoppel from availing himself in a court of law of the statute of limitations, although appropriate and adequate relief under such circumstances may be afforded plaintiff by an application to the court of chancery for injunction, and statements and conduct by defendant in a suit in equity may estop him from setting up the statute of limitations. But the prevailing rule is that the doctrine of equitable estoppel may in a proper case be invoked to present defendant from relying upon the statute of limitations, it being laid down as a general principle, that when a defendant electing to set up the statute of limitations as previously by deception or any violation of duty toward the plaintiff, caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which the court will not allow him to hold. Thus defendant will be estopped to set up the statute of limitations in bar of plaintiff's claim when the delay which would otherwise give operation to the statute has been induced by the promise or representation that the statutory bar would not be interposed, or by inducing plaintiff to believe that an amicable adjustment of the claim will be made without suit. . . ."

Numerous authorities are cited in support of the above rule under footnote 75 on page 726.

Under the head of Limitations of Actions in 25 Cyc., page 112, under the subhead F, Waiver and Estoppel, the rule is thus stated:

"A statute limiting the time within which actions shall be brought has been said to be for the benefit and repose of individuals and not to secure general objects of policy or morals, and hence it may be laid down as a general rule that the protection may be waived by one entitled to rely upon it. . . ."

On page 1016 under the same general head, and the subhead of "Estoppel," the rule is thus stated:

"The doctrine of equitable estoppel may in a proper case be invoked to prevent defendant from relying upon the statute of limitations, it being laid down as a general principle that when a defendant electing to set up the statute of limitations

previously by deception or any violation of duty toward plaintiff, has caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which equity will not allow him to hold. . . ."

Among other cases cited in support of the above rule is the case of Davis v. Dyer, 56 N. H., 143, where it was held that where a plaintiff is induced to delay suing by defendant's agreement to submit the controversy to arbitration, and to abide by and perform the award, which he does not do, these facts, although not an exception recognized in the statute of limitation, may yet estop defendant from setting up the statute.

Another case in support of the rule cited in the footnotes is that of Swofford Bros. Dry Goods Co. v. Goss, 65 Mo. App., 55, wherein it was held, that, an executed accord, although not itself enforceable, may be pleaded as an estoppel in pais to avoid the bar of limitations, when one of the parties thereto has been thereby induced to delay action on his claim till after the expiration of the statutory limitation.

Applying these general rules to the facts as disclosed by the record in this case, we are of the opinion that by the conduct and actions of the Quarterly County Court of Hardin County, the plaintiff was induced to delay his action until after the statutory limitations. It is shown that before the expiration of twelve months after the wrongful appropriation and possession of the property taken for the right of way, the Quarterly County Court of Hardin County appointed a committee from the court to investigate and report on the respective right of way claims of several of the land owners, including the plaintiff. It also appears that later plaintiff and other of the land owners called on the attorney representing the county in these claims, and was advised by the attorney that they were entitled to compensation for the land taken. The Quarterly County Court was then in session, and the attorney for the county and representing the county in the right of way claims for this highway went before the County Court and addressed the Quarterly County Court in open session, and advised the Quarterly County Court that unless some adjustment was made for the land taken for the right of way the respective claimants would institute suit. Thereupon the Quarterly County Court appointed a special committee, to meet with the respective land owners for the purpose of adjusting the right of way claims so as to prevent a suit, and Judge Ross, representing the county in the matter, was directed to meet with the committee for the purpose of adjusting the claim. Whereupon, in response to a letter addressed to the respective claimants, including plaintiff, the claimants, including

plaintiff, met the committee at the appointed time and place. When the claim of plaintiff was reached for consideration and discussion, the committee proposed a settlement of $650 for the land taken if plaintiff would waive any claim for incidental damages. This proposition was accepted by the plaintiff, and whereupon Judge Ross, the attorney representing the county in the matter, stated, ''Another claim is settled.'' This occurred before the bar of the statute. Plaintiff admits that although it was not so stated by the committee or the attorney, but he understood that the matter would be reported back to the Quarterly County Court for ratification. He also testified that he considered the matter was settled on that basis. He also understood, and there is no conflict in the evidence on that question, that the purpose in appointing the committee was to get the claims adjusted and settled without the necessity of litigation, and that because of these facts he delayed his suit pending the final action of the Quarterly County Court. When the Quarterly County Court met shortly thereafter the statute of limitations of twelve months had run. At that meeting of the County Court, the Quarterly Court, it failed to ratify and approve the settlement made by plaintiff and the committee, but passed a resolution to the effect that the members of the court would visit the property in person and arrive at the amount of the damages provided the respective claimants would agree to accept such amount as the court would fix, and the committee was appointed to procure the agreement to this proposition by having the claimants sign a written agreement to that effect. It is not shown just what became of this final effort as to other claimants, but plaintiff declined to accept the proposition, and the attorney representing plaintiff and certain other claimants, addressed a communication and delivered it either to the County Judge or to the County Court Clerk refusing the proposition, and advising that suit would be brought. The evidence of the attorney representing the claimants and who testified that he wrote the letter and delivered it to the County Judge or to the County Court Clerk, was excepted to by the defendant, and the exception sustained. However, we do not deem this material, since the suit was brought within twelve months after the Quarterly County Court failed and refused to ratify and confirm the settlement agreed upon between plaintiff and the committee. We are of the opinion that the plaintiff was well warranted in relying upon the County Court ratifying the settlement as made by the committee and the plaintiff considering the way and manner that the settlement was arrived at, and because of the statements made in the Quarterly County Court that the committee was being appointed to make the adjustment and

settlement so as to prevent litigation. We are also of the opinion that plaintiff relied upon the good faith of the County Court in quarterly session in seeking to adjust without suit, and that he was willing to give the county full opportunity to make the adjustment. In view of the appointment of the several committees, and the statements made by the attorney representing the county, and especially at the time the proposition was submitted by the committee and accepted by plaintiff, and in view of all the facts and circumstances, we cannot escape the conclusion that plaintiff was thereby induced to delay the filing of the suit within the period of limitations; that he acted in good faith, and relied upon the assurances given that a satisfactory adjustment would be made without litigation, and that these facts as disclosed by the record operate to estop the defendant from pleading and relying upon the statute of limitations as a bar to the action of plaintiff.

We are further of the opinion that, it was a question of fact to be submitted to the jury, together with the other issues, as to whether the plaintiff was induced to delay his action until after the twelve months period of limitation had expired, by the actions, conduct and representations made by the defendant and its agents. We are therefore of the opinion that the learned trial judge was in error in sustaining the motion for a directed verdict in favor of defendant, and to this extent the assignments of error are sustained.

It results that the case is reversed and remanded for a new trial. The defendant, appellee, will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.