Katherine **SPARKS**, Plaintiff–Appellant,

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY and Metropolitan Development and Housing Agency, Defendants–Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 27, 1989.

Permission to Appeal Denied by Supreme Court May 1, 1989.

Larry D. Woods, Tim Wibking, Jason Rogers, Woods & Woods, Nashville, for plaintiff-appellant.

George E. Barrett, Penny Harrington, Nashville, for defendant-appellee Metropolitan Development and Housing Agency.

William Michael Safley, Nashville, for defendant-appellee Metropolitan Government of Nashville and Davidson County.

## OPINION

CANTRELL, Judge.

The issue in this case is whether the applicable statute of limitations bars the plaintiff's action. The plaintiff contends that the defendants are equitably estopped from asserting the statute of limitations defense and that she impliedly accepted an offer to complete the repairs on her home by her forbearance to bring an action on the original agreement.

Ms. Katherine Sparks owns an old home on Twentieth Avenue North in Nashville. In 1978, the house was in need of extensive repairs and Ms. Sparks applied for assistance from the Emergency Rehabilitation Program of the Metropolitan Government of Nashville and Davidson County. In June of 1979, Ms. Sparks was approved for the program and a representative of the Metropolitan Government met with her to decide what work needed to be done. At that time, the Emergency Rehabilitation Program—a program funded by the federal government to provide free repairs to the homes of persons with low incomes—provided up to $1500–worth of materials and the labor to make the emergency repairs on the homes of qualified individuals.

The parties disagree on the scope of the work to be done under the proposal of June 1979. However, they do agree that the old, two-story back porch on the home had collapsed and had to be removed. In September of 1979, workmen representing the defendants demolished the back porch by pulling it down with a truck. Ms. Sparks objected to this method of removing the porch and to the fact that the workmen proposed to replace the porch with a one-story structure that served only the main floor of the house. On December 4, 1979, after Ms. Sparks had complained about the quality of the construction and the theft of certain items from her home, she ordered the workmen off the job.

On December 12, 1979, Ms. Sparks met and discussed the project with representatives of the defendants. The meeting resulted in an agreement that a representative of the Emergency Rehabilitation Program would return to the house to determine what needed to be done to complete the work. When he attempted to comply, however, he could not get in the house, and Ms. Sparks finally told his superiors that she did not want him back on the property.

From December of 1979 until December of 1983, the parties could not agree on the extent of work to be done or how it was to be completed. The main point of contention was Ms. Sparks's insistence that the back porch be rebuilt as it was originally constructed. During the four-year period, Ms. Sparks complained to the mayor, her congressman, and Senator Baker. These complaints often resulted in further proposals, none of which were ever accepted by Ms. Sparks. In December of 1983, the negotiations finally broke off completely.

On May 12, 1986, Ms. Sparks filed this action against the Metropolitan Government and the Metropolitan Development and Housing Agency, which had taken over the Emergency Rehabilitation Program in late 1979. The complaint alleges that, in demolishing the back porch, the repairmen damaged the main structure of the house, including the roof supports. In addition, she alleges that the repair work done on the home was of poor quality. The com-

plaint outlines some of the negotiations between the parties and then alleges that, since May 13, 1980, "the defendants, Metro and MDHA and their agents, have taken the position that they are no longer obligated to fulfill the terms of their original agreement with Ms. Sparks."

The damages claimed by Ms. Sparks are also described in a later portion of the complaint:

As a direct, proximate and foreseeable result of the action of the workers as described in the foregoing paragraph, and of the failure of the defendants to complete the agreed upon work on her home, plaintiff has suffered damages in the following respects:

A. At the conclusion of the attempted work in December 1979, plaintiff's house was in substantially worse condition than when the work was begun;

B. Plaintiff's house was left in such a condition that it was highly susceptible to damage and deterioration caused by the elements, and in fact did suffer extensive damage and deterioration as a result of the elements in succeeding years;

C. As a result of the condition of plaintiff's home, her personal property was susceptible to damage from the elements, and in fact was damaged by the elements in succeeding years;

D. Plaintiff's home was left in such a condition that it was more susceptible to being damaged through burglaries and vandalism, and in fact was damaged as a result of such incidents in succeeding years.

Both defendants raised the statute of limitations as a defense. At the conclusion of all the proof, the chancellor held that the statute of limitations had run before Ms. Sparks filed her action in May of 1986.

### The Statute of Limitations Defense

There are two statutes of limitations that might arguably govern the period of time within which this action should have been brought. The first covers actions for breaches of contract generally and provides that "[a]ctions on contracts not otherwise

expressly provided for" shall be brought "within six (6) years after the cause of action accrued." Tenn.Code Ann. § 28–3–109(a) (1980). The second provides that actions for injuries to real property shall be brought within three years from the time the cause of action accrues. Tenn. Code Ann. § 28–3–105 (1980).

In this case, however, it is not necessary to decide which statute applies since both statutes (if not tolled) would have run by the time this action was filed in May of 1986. A cause of action on the contract or for damages to Ms. Sparks's property would have accrued at the latest by December 4, 1979, the date the last work was performed by the defendants. Thus, more than six years passed before Ms. Sparks filed this action. On the other hand, if, as Ms. Sparks contends, the applicable statute of limitations was tolled by the negotiations of the parties up to December of 1983, less than three years passed before the action was brought and neither statute would be a bar.

■ To avoid the statute of limitations defense, Ms. Sparks contends that the defendants are equitably estopped from raising it. She cites the well-settled rule that a party, by its conduct, may be estopped to rely on the statute of limitations. Where by promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit within the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense. This rule was recognized in *Whitlow v. Hardin County*, 13 Tenn.App. 347, 356 (1930), where the court said:

> This brings us to what we conceive to be the controlling and determinative question made on this appeal, and that is, was the plaintiff induced to forbear bringing his suit before the expiration of the twelve months statutory period on account of any conduct by [the defendants] and representations made looking to a probable settlement and adjustment

without litigation; and if so, would such conduct and representations operate as an estoppel against the defendant from pleading and relying upon the statute of limitations as a bar to the action?

Later in *Whitlow*, the court quoted *Corpus Juris* for the following rule:

> "Thus defendant will be estopped to set up the statute of limitations in bar of plaintiff's claim when the delay which would otherwise give operation to the statute has been induced by the promise or representation that the statutory bar would not be interposed, or by inducing plaintiff to believe that an amicable adjustment of the claim will be made without suit...."

*Whitlow*, 13 Tenn.App. at 359 (quoting 37 C.J. 726). In another case, applying Virginia law, the court said:

> The doctrine is, of course, most clearly applicable where the aggrieved party's delay in bringing suit was caused by his opponent's intentional misrepresentation; but deceit is not an essential element of estoppel. It is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire.

*City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir.1977) (footnote and citations omitted).

■ Under the circumstances of this case, we think the essential element of reliance is missing. Ms. Sparks did not allege or prove that the defendants made any promises that they were going to satisfy her demands. In the section of her complaint quoted above, she alleged that they had in fact steadily denied any further responsibility to her after May of 1980. The record shows that the defendants did make numerous proposals from 1979 to 1983, all of which Ms. Sparks either ignored or steadfastly declined to accept. We are of the opinion that Ms. Sparks cannot reject an offer of completion of the contract and then say that she relied on that promise to her detriment. Therefore, the claim of estoppel is without merit.

### The Implied Contract

Ms. Sparks insists that she accepted one of the proposals made by the defendants by her forbearance to bring suit on the original claim. It is our opinion that this issue cannot be considered because it was not raised in the court below. Issues not raised in the trial court cannot be raised for the first time on appeal. *Irvin v. Binkley,* 577 S.W.2d 677 (Tenn.Ct.App. 1978).

Further, we are of the opinion that the same difficulty arises in connection with this issue that we discussed in the first issue. In order to prevail on this issue, Ms. Sparks would have to prove that she delayed bringing her action on the first contract in reliance on the promises of the defendants. We are unable to find anywhere in the record evidence that Ms. Sparks delayed taking action on the original claim in reliance on the promises or actions of the defendants or that the defendants bargained for her forbearance in any of the proposals.

Finally, we are of the opinion that Ms. Sparks abandoned any claim based on an agreement subsequent to the 1979 agreement. At oral argument, counsel for Ms. Sparks conceded that the action was based on the 1979 agreement and that the issues on appeal related solely to the question of whether the statute of limitations had run as to that agreement.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

TODD, P.J., and LEWIS, J., concur.