IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2003 Session

# ELIZABETH CONWAY SNODGRASS v. ALLEN HOWARD FREEMON

**Appeal from the Chancery Court for Lawrence County**
**No. 2730     Stella L. Hargrove, Chancellor**

---

**No. M2002-01247-COA-R3-CV - Filed July 29, 2003**

---

Defendant/Cross-Claimant appeals the action of the trial court in holding that Cross-Claimant had not carried his burden of proof to establish adverse possession of the property in issue. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and CAROL L. MCCOY, SP. J., joined.

Barbara Freemon, Nashville, Tennessee, for the appellant, Allen Howard Freemon.

Andrew Hoover, Pulaski, Tennessee, for the appellee, Elizabeth Conway Snodgrass.

## OPINION

This is a case involving adverse possession and adverse possession alone. Much toil in the vineyard could have been avoided if the parties would have focused their trial labors, and particularly their appellate labors, on this cardinal fact.

"The object and purpose of any pleading is to give notice of the nature of the wrongs and injuries complained of with reasonable certainty, and notice of the defenses that will be interposed, and to acquaint the court with the real issues to be tried." *Hammett v. Vogue, Inc.*, 165 S.W.2d 577, 579 (Tenn. 1942).

Tennessee has long recognized the common law rule that "the *probata* must correspond to the *allegata*." *Tennessee Enamel Mfg. Co. v. Stoves, Inc.*, 192 F.2d 863, 867 (6th Cir. 1951), *cert. denied*, 342 U.S. 946 (1952); *see also American Lead Pencil Co. v. Nashville, C. & St. L. Ry.*, 134 S.W. 613 (Tenn. 1911); *Nichols v. Smith*, 111 S.W.2d 911 (Tenn. Ct. App. 1937). While the common law rule has been relaxed by the provisions of Tennessee Rule of Civil Procedure 15.02

relative to issues tried by express or implied consent of the parties, the common law rule still applies where there is no express or implied consent of the parties to try issues extraneous to the pleadings. *Hiller v. Hailey*, 915 S.W.2d 800 (Tenn. Ct. App. 1995).

This suit was originally filed by Elizabeth Conway Snodgrass in July of 1985 in the Chancery Court of Lawrence County, Tennessee, wherein Howard P. Freemon, trustee, and Allen Howard Freemon, individually, were among the named defendants. Also named as defendants were:

> ALL OTHER PERSONS UNKNOWN Claiming Any Right, Title, Estate, Lien or Interest in and to the Real Property Described in Complainant's Complaint Adverse To Complainant's Ownership, or any Cloud Upon Complainant's Title Thereto; Such Property Being Located in the 13th Civil District of Lawrence County, Tennessee on Chief's Creek Containing 215.4 acres, more or less, and Being Bounded Generally North by G.R. Limited Partners; East by Murfreesboro Bank and Trust Company and Raymond Dale, Et Ux; South by Wallace Gray, Et Ux, and West by Chief Creek Corporation and Natchez Trace Wilderness Preserve.

This was an action to quiet title and to adjudge and determine a boundary line for the Snodgrass' real estate. Snodgrass asserted title to a 215.4 acre tract, the principle prayer for relief being:

> That the Defendants be required to set forth the nature of their claims, if any, and that any adverse claims of the said defendants, or any of them, be determined by a decree of this Court; and that by said decree, it be declared and adjudged that the Complainant is the absolute and fee simple owner of said premises, and that none of the Defendants in this cause, have any estate or interest whatever in and to said land and premises; and that said defendants, and each of them, be forever debarred from asserting any claim whatever in or to said land and premises adverse to the Complainant.

On November 12, 1986, Allen Howard Freemon filed an Amended Answer and Counter-Claim essentially denying the allegations of the Complaint and asserting that a certain portion of the property claimed by Snodgrass was, in fact, owned by Allen Howard Freemon under a recorded deed. He then asserted:

> That the Counter-Plaintiff has been in possession of this property for a period in excess of twenty (20) years. The Counter-Plaintiff's possession of the property has been open, notorious, adverse to any other party, continuous, and exclusive. That said possession has been pursuant to color of title in excess of seven (7) years.

On November 7, 1989, the original Complaint was dismissed in its entirety because of failure of Snodgrass to diligently prosecute the action. This dismissal was without prejudice. The case then was left pending only on the Counter-Complaint of Allen Howard Freemon, asserting title by adverse possession.

Following dismissal of the Complaint for failure to prosecute, there ensued twelve years of blissful slumber which was interrupted on September 21, 2001 when Snodgrass sought dismissal of the Freemon Counter-Claim, primarily under the provisions of Tennessee Code Annotated section 28-2-109 and section 28-2-110 because of the non-payment of taxes by Freemon for a period of twenty years.  It appears from the proof that the failure to prosecute the original action was not due to neglect or inadvertence but was a studied, affirmative, tactical decision.  The husband of the original Plaintiff, John Snodgrass, testified:

> Q. And when that action was filed - - That is the action that was filed in the case that we are hearing today, but was then non-suited?
> A. That is correct.
> Q. Why was that?
> A. It was non-suited - - Why was it non-suited?
> Q. Yes.
> A To my knowledge, we were - - Of course, we were, at that time, in the upper Rhode Island and in New York State.  We were advised that we should non-suit and bring suit later, because it would - - our case would be better if we did that.
> Q. All right.  And that was on the advice of counsel?
> A. That is correct.
> Q. Did the subject of the payment or non-payment of taxes, was that an issue of the - - of the decision to non-suit?
> A. It was an issue only in that we wanted to be able to perfect our claim - - or let's say Bet - - Betsy's claim to the property by having an unbroken chain of - - of payment of taxes, so that under the statute, we would be - - would be - - or she would be the - - the owner of the property by presumptive, anyway, by the fact of the payment of twenty (20) years of taxes on the property.
> Q. And that would have gone back to the time - - She began paying taxes in what year?
> A. She began paying taxes in 1976.  And her brother paid the taxes in '75 and '74, I understand.  And, then, previous to that, the taxes were paid because of the probate of her father's will back to 1967.
> Q. In non-suiting your primary action, did there come a determination that you wanted to defend title to this property rather than prosecute title to this property?
> A. I don't - - Please restate the question.
> Q. Let me ask you in the al - - in the alternative.  Is that instead of the Freemon family defending their title, you wanted them to prosecute their title?
> A. Well, yes.  Because, again, under the statute, they are barred from prosecution if they are trying to bring suit to - - to - - for title because of non-payment of taxes for twenty (20) years.
> Q. And after Mr. Fowlkes, Mr. Jack Henry represented you?
> A. That is correct.
> Q. And was his advice consistent with what Mr. Fowlkes had told you?

A.     Yes, that we should insure that we could show that we had paid the taxes for twenty (20) years and have a period of time of twenty (20) years of paid - - of non-payment of taxes by Mr. Freemon or Mr. Freemon's family.

Q.     And as of 1996, that has occurred.  You - - Your wife has now paid taxes for twenty (20) years?

A.     That is correct.

It appears that counsel for Ms. Snodgrass, after filing her Complaint to quiet title, came to grips with the practical problems facing whichever party had the burden of proof in settling questions of title and possession of what is, in large part, wilderness land, uninhabited and uncultivated.

The effort to use Tennessee Code Annotated sections 28-2-109 & 110 relative to the payment of taxes as a basis for dismissing the Counter-Claim on summary judgment failed when the trial court, on November 27, 2001, entered an Order holding:

1.     This case was originally filed by Plaintiff on the 29th day of July, 1985, against eight defendants, including Allen Howard Freemon.  A Counter-Claim was filed on behalf of Allen Howard Freemon.  Subsequently, Plaintiff's action was dismissed for lack of prosecution.  The Counter-Claim survives.

2.     The date of controversy is July 29, 1985.  Plaintiff cannot show that she is entitled to *prima facie* presumption of ownership under Tenn. Code Ann. 28-2-109.  As of the date of filing her lawsuit, she can prove payment of taxes from 1967 to 1975 and from 1977 to 1985.  Plaintiff cannot show that she has paid taxes on this property to the exclusion of all others during this time.  There are material questions of fact as to whether the taxes paid by and through Defendant, Freemon, since 1958, include the same property as that claimed by Plaintiff.

3.     There are mixed questions of fact and law as to whether Defendant, Freemon's use of that portion of land in dispute, has been in open, continuous, notorious and adverse possession, under proper color of title for more than seven years.

4.     The Court assumes that Plaintiff is asking her to question whether Defendant, Freemon's Counter-Claim is brought in bad faith, relative to the prior action against Conway and Shaeffer in 1972.  Whether Defendant, Freemon, is acting in bad faith is a question of fact.

5.     There are material questions of fact as to whether this action is, indeed, simply a boundary line dispute between Plaintiff and Defendant, Freemon.  The Court is ready to appoint an independent surveyor as Special Master in an effort to end a controversy that exceeds sixteen years.

The hopes expressed by the trial court in the last paragraph of this Order were not to be realized.

While the tactic of voluntarily dismissing the Complaint and hoping, thereafter, to establish title based on non-payment of taxes pursuant to sections 28-2-109 & 110 of the Code failed in its object, the dismissal accomplished its dominant purpose - - to cast the burden of proof on the Counter-Claimant, Freemon, seeking to establish adverse possession. The burden of proof is decisive in this case, and the party bearing that burden under the facts of this case faces formidable and, indeed, near insurmountable obstacles.

COLOR OF TITLE

Only the deeds, under which Elizabeth Conway Snodgrass claims title, are established by the pleadings and the proof to be unquestionably muniments of title. The Complaint alleged:

> The said 215.4 acres, more or less, is a portion of the land which was conveyed to Lee Conway by deeds appearing of record in Deed Book 131, page 142, and Deed Book 134, page 225, Register's Office, Lawrence County, Tennessee. The said Lee Conway died in 1972, and by will appearing of record in Will Book F, page 364, Office of the County Court Clerk, Lawrence County, Tennessee said property was devised to William Carter Conway and Elizabeth Conway Snodgrass as equal tenants in common. By partition deed appearing of record in Deed Book 178, page 59, the one-half (½) undivided interest of William Carter Conway was conveyed to the Complainant thus vesting in her the absolute fee simple title to said property.

Freemon admits the color of title in the Counter-Claim wherein it is stated:

> That the Counter-Plaintiff's real property is bounded on the south boundary line by the property alleged to belong to the original Plaintiff in this action. That a portion of the properties that Plaintiff alleges to be hers are, in fact, on the tract of land owned and possessed by the Counter-Plaintiff.

The only deed asserted in the Counter-Complaint by Allen Howard Freemon as a muniment of title is a deed recorded in Deed Book 176, page 470 of the Register's Office of Lawrence County, Tennessee, dated October 27, 1976, and describing property to be:

In the 13th Civil District, on the waters of Chief Creek.

BEGINNING at a white oak on the west bank of Chief Creek, approximately 900' north of the Lawrence-Lewis County corner, and the Southwest corner of the Christian Home Property; thence east along said Christian Home Property 1600' to a pin oak; thence south 2600' to a pine; thence west 775' to the forks of Chief Creek, where Goss Branch enters Chief Creek; thence southwardly along said Goss Branch 900' to a pine; thence south 900' to a white oak; thence west 1500' to a red oak on the north bank of a spring; thence north 1100' to a beech; thence northeast 1500' to a hickory near the crest of a ridge to the west bank of Chief Creek; thence northwardly

along Chief Creek 2200' to the beginning, containing by estimation 100 acres, more or less.

Being the same property conveyed to Grantor by Clerk and Master deeds and thereafter sold to Howard P. Freemon, Trustee for Allen Howard Freemon. This deed to replace a deed that was lost, that being the deed where Grantor sold to Howard P. Freemon, Trustee for Allen Howard Freemon.

The location of this tract of land is seriously disputed in the proof, and it is by no means certain that this tract is located within the boundaries of the 214 acre tract claimed by Snodgrass. The question of fact as to the location of this property was determined adversely to Freemon by the trial court, and the evidence certainly does not preponderate against such finding of the trial court.

ADVERSE POSSESSION

Adverse possession in Tennessee can be established either under statute or by the common law. After an expositive discussion of both statutory adverse possession and common law adverse possession, this Court, in synopsis, stated:

Briefly summarized, T.C.A. §28-201 and T.C.A. § 28-205 deal with the right and convey title to the adverse holder; and T.C.A. § 28-202 and T.C.A. § 28-203 deal with defensive rights and the possessions under these latter two statutes can be used by the adverse holder defensively only.

Under the common law in this state, legal title to land may be acquired by prescription; that is twenty years' actual adverse possession with or without color of title. *Walsh v. Rose*, 29 Tenn.App. 78, 193 S.W.2d 118.

*Moore v. Brannan*, 304 S.W.2d 660, 670 (Tenn.Ct.App. 1957).

In statutory adverse possession, since Freemon is seeking to establish adverse possession offensively rather than defensively, he is limited to Tennessee Code Annotated sections 28-2-101 and 28-2-105. Since both of these statutes require adverse possession for a minimum of seven years under a muniment of title purporting to convey the fee and Freemon has no such muniment of title, their claim of adverse possession must stand or fall on the common law doctrine of prescriptive user.

An adverse possessor can succeed under the common law if the facts presented make out his case.

The insistence of the defendant here made seems to be that because no paper writings are introduced to show title the complainants are not entitled to succeed. This is not necessary where from long possession the presumption of a grant arises. Continued uninterrupted possession for a period of 20 years is sufficient in law to

evidence title and seisin in fee. As stated in *Cannon v. Phillips*, 34 Tenn. (2 Sneed) 214:

> "Possession of land is prima facie evidence of title; the law supposes that it had a legal origin, and when undisturbed for a period of 20 years, it becomes in view of the law, an assurance of title of no less force or efficacy than the actual grant, whose place it supplies."

> *See, also, Scales v. Cockrill*, 40 Tenn. (3 Head.) 433-435; *Marr v. Gilliam*, 41 Tenn. (1 Cold.) 489-501.

> Complainants, under the showing made in the proof of continuous, adverse possession of the property for a period of more than 20 years, became entitled to maintain an action of ejectment therefor just as if a deraignment of title from the state had been made, or a continuous, adverse possession under registered color of title for the statutory period.

*Keel v. Sutton*, 219 S.W. 351, 352-53 (Tenn. 1920). It is also long settled that such a claimant must rely upon the strength of his own title and not on the weakness of his adversary's title. *Atkinson v. Atkinson*, 130 S.W.2d 157 (Tenn.Ct.App. 1939).

The proof in the case falls far short of establishing the kind of open, continuous, exclusive, adverse and notorious possession necessary to establish title by prescription. At best, the proof shows non-exclusive use.

The trial court, in its final judgment, held:

1. The Court has listened to the proof, observed the demeanor and assessed the credibility of the witnesses at trial, and reviewed a multitude of exhibits introduced by each party.
2. The original Complaint filed by Snodgrass in July of 1985, having been dismissed, the burden of proof is on the surviving Defendant, Counter-Plaintiff, Freemon, to show that his tax sale deed includes property claimed by Snodgrass and that the Court should determine a property line between the parties' property.
3. The Court finds that Freemon has failed to carry his burden of proof by clear and convincing evidence that he has openly, continuously, exclusively, adversely and notoriously possessed that portion of the Snodgrass property claimed by him for more than twenty years. Adverse possession must be of such a character as to leave no doubt of claim of ownership. Freemon has failed to sustain the proposition that his possession was, in fact, adverse to the true owner.

4.  Freemon has failed to carry his burden of proof that he holds any portion of the property under color of title.

5.  The proof is insufficient to advance any equitable claim of ownership to the property, or any portion thereof, by Freemon.

In so holding, the trial court was eminently correct under either the preponderance of the evidence standard or the clear and convincing evidence standard. Freemon is simply unable to carry his burden of proof, just as Snodgrass might well have been unable to carry the burden of proof on her suit to quiet title.

To the extent that the Counter-Complaint can be construed as an action to establish a boundary line, it fails at that too due to inadequate proof:

> In a suit, purely a boundary line dispute, where the title on either side of the boundary line is questioned, the statute specifically requires the complainant to establish his title by a clear preponderance of proof, and while this case comes to this Court with the presumption that the decree of the Chancellor is correct unless the evidence preponderates against it, we cannot fail to take into consideration the implication of the exact provisions of Section 16-607, T.C.A., which is as follows:
>
> > "In all such cases a complete deraignment of title by the complainant from a state grant or common source of title shall not be required as in ejectment cases, but it shall be sufficient to establish title in complainant, *that he prove clearly that he is the true owner of the lands described in his bill.*" (Emphasis added.)
>
> This simply means that the complainant must prove that he is the true owner or that he had become entitled to the possession of land adjacent to the boundary which he undertakes to have established, . . . .

*Carr v. Wilbanks*, 324 S.W.2d 786, 791-92 (Tenn.Ct.App. 1958).

Counsel for the Freemon on appeal, apparently recognizing the difficulties presented by the Snodgrass muniments of title, mounts an attack upon those deeds as being champertous and utterly void. As such an attack was not made in the trial court, it presents no subject for appellate review. *Sparks v. Metro Gov't. of Nashville and Davidson County*, 771 S.W.2d 430 (Tenn.Ct.App. 1989); *Stuermer v. City of Chattanooga*, 914 S.W.2d 917 (Tenn.Ct.App. 1995).

The judgment of the trial court is in all respects affirmed, and costs of the cause are assessed to Appellant.

_____
WILLIAM B. CAIN, JUDGE

-8-