CHARLES N. READING

*v.*

MARY H. WILSON and her guardian.

1. An infant may make a valid contract for necessaries, but he is only invested with such capacity when in a state of need.

2. A guardian has no power to bind either the person or the estate of his ward by contract.

3. A guardian may be authorized, by a court of competent jurisdiction, to make a contract for his ward, but, in such case, he does not exercise a power belonging to his office, but an extraordinary power granted to him for a special purpose.

---

On motion to dismiss bill under *Rule 215.*

*Mr. John A. Bullock,* for motion.

*Mr. John L. Connet, contra.*

VAN FLEET, V. C.

The bill in this case is founded on a new notion of equity.

Reading *v.* Wilson.

The defendants deny that the bill presents any ground of equity whatever, and they seek to have it dismissed, on motion, under *Rule 215.*

If the complainant has any right to relief, his right must be found in the following facts: Robert Thatcher was appointed the guardian of Mary H. Wilson, an infant, in 1868. Under the power thus conferred upon him, he received estate belonging to his ward of the value of $14,000; in 1875, he was directed by an order of the court, which appointed him, to pay to the mother of the infant $10 a week, for the board and clothing of the infant; on the 17th of April, 1877, Thatcher drew an order in favor of the complainant, by which he requested the complainant to let the mother of the infant have goods to the amount of $450, and directed the complainant to charge the goods to his account; in signing the order, Thatcher added to his name the words "guardian of Mary H. Wilson." Between the date of the order and the 1st of March following, the complainant furnished goods under the order to the value of $450; the infant, at the time the goods were furnished, was living with her mother, and the goods furnished were such as were suitable and necessary for the infant. Thatcher paid less than one-fourth of the amount due for the goods, and in June, 1878, the complainant recovered a judgment against Thatcher for the unpaid balance. Execution was issued on the judgment, but nothing was realized, Thatcher having become insolvent subsequent to the date of the order. Thatcher was removed from office as guardian, on the 13th of April, 1878, and the present guardian was, on the same day, appointed in his stead. By the order removing him, Thatcher was directed to deliver to the present guardian all the estate of his ward for which he was liable. He did not obey this order; he paid $6,000, but this left him still liable for a deficit of over $14,000. Suit was subsequently brought against him and his sureties, on the bond given by him as guardian, and a judgment recovered. Two thousand dollars was afterwards collected on this judgment of one of his sureties, but nothing of the other. The infant's estate has been depleted, by Thatcher's malfeasance, to an extent exceeding $12,000. Whether

or not an allowance was made to Thatcher in his account as guardian, for the complainant's claim, the bill does not state. Inasmuch as he has not paid it, the presumption would be that it was not allowed.   The estate in the hands of the present guardian amounts to about $5,700.   The complainant insists that, having exhausted his legal remedy against Thatcher, without obtaining satisfaction of his debt, and his debt having been incurred by Thatcher for the benefit of the infant, and she having actually had the benefit of the goods for which the debt was incurred, her estate is bound in equity to pay his debt.

The complainant's case is, I think, without support in either principle or precedent.   Unless the foregoing facts present an equity against the infant resting in some contract, duty or obligation, or arising from some trust, it would seem to be manifest that the complainant has no case.   He makes no charge of fraud against the infant, nor does he claim that he is entitled to relief on the ground of accident or mistake.   It is clear that there were no contract relations between the infant and the complainant. An infant, though under a general disability to do acts valid in law, may nevertheless make a valid contract for necessaries, but he is only invested with this capacity when in a state of need. If, when he attempts to contract, he is already supplied with such things as are necessary, the articles he buys are not necessaries, and he is not, therefore, bound by his contract.   *1 Chit. Con. (11th Am. ed.) 202.*   The goods in this case were sold to the guardian, he alone was liable for the debt, he supplied the infant with the goods, and hence it is clear that the infant made no contract with the complainant, and it further appears that she was in a situation which incapacitated her to make a valid contract.   The complainant sold his goods to a person who was *sui juris;* he and Thatcher were both of full capacity, and were free to deal or not, just as they thought proper.   The complainant was at liberty to make just such a bargain as he thought prudent; he could refuse to sell his goods except for cash, or if he sold on credit, he was at liberty to stipulate for any security he desired, or, if he chose, he could sell on credit without security. He had a right to make his bargain in his own way, and after

Reading *v.* Wilson.

it was made, to have its terms enforced, but this is the limit of his right.

A guardian has no authority whatever to bind either the person or the estate of his ward by contract. It is his duty to see that his ward is maintained and educated in a manner suitable to his means, and if, in the performance of this duty, it becomes necessary for him to enter into contracts, such contracts impose no duty on the ward and do not bind his estate, but bind the guardian personally and alone. For any reasonable expenditure made by a guardian, out of his own means, for the benefit of his ward, he is, of course, entitled to be re-imbursed out of the ward's estate, but this is the limit of the ward's liability, whether measured by rules of law or rules of equity. A guardian is without the least capacity or authority to impose contract obligations on his ward. He may do so under the direction of a court of competent jurisdiction, but he does not exercise, in such cases, a power belonging to his office, but an extraordinary power conferred for a special purpose. These familiar principles may be found in almost any treatise on the relation of guardian and ward. *Schoul. on Dom. Rel.* §§ *342, 343, 344.* A concise statement of them is given in *Rollins* v. *Marsh, 128 Mass. 116.* I think it is clear that the facts stated show no equity against the infant.

The complainant rests his right to relief mainly, if not wholly, on the authority of *Barnum* v. *Frost, 17 Gratt. 398.* His counsel frankly admits that this is the only adjudication he has been able to find which gives the least support to his claim. This case was decided by a divided court, and is, in all its essential features, entirely dissimilar from the present case. The litigants there were a creditor of the guardian, who had furnished supplies for the infant, on the contract of the guardian on the one side, and the sureties of the guardian on the other. No attempt was made to reach the infant's estate; indeed, the infant was not a party to the suit. The principal object of the suit was to subrogate the creditor of the guardian to the rights of the infant, so that he might collect his debt of the sureties of the guardian. Subrogation was decreed. To reach this result, it was necessary,

29

upon well-settled principles, to declare that the estate of the infant was subject to some obligation or duty to the creditor of the guardian. Subrogation could not be decreed in favor of a stranger or mere volunteer. It was not pretended that the estate of the infant was under any legal obligation to the creditor of the guardian, but a majority of the court held that it was subject to an equitable liability. They reasoned in this wise: The law places a guardian under an obligation to provide for the maintenance of his ward out of the profits of his ward's estate; a person, therefore, who furnishes maintenance to the ward, under a contract with the guardian, but who does not give exclusive credit to the guardian, has a right, which a court of equity will recognize, to have those profits applied for his benefit. The creditor, in such case, in addition to his claim at law against the guardian, upon his personal contract, has a direct and original claim in equity to be paid out of the profits of the ward's estate. This reasoning appears to me to be radically unsound. My mind is not acute enough to discern any connection between its premises and conclusion. There can be no doubt that it is the duty of a guardian to maintain his ward, and to that end he may use so much of his ward's estate as may be necessary for that purpose, but this gives him no right whatever to charge or encumber his ward's estate. If he were to attempt to do so by an instrument plainly declaring such to be its purpose, it would be without the slightest legal force as against his ward's estate, and much less, as it seems to me, can a contract which never had any such purpose be so enlarged, by judicial construction, as to be entitled to such effect. In maintaining his ward, a guardian may adopt one of two courses; he may retain in hand sufficient estate to pay his ward's current expenses; in such case, he should pay cash for whatever he may furnish to his ward. Or, he may invest his ward's whole estate and pay his ward's current expenses out of his own moneys, and look to his ward's estate for re-imbursement. But he has no power to pledge his ward's estate for payment of a debt he may contract for the benefit of his ward. It may be, that if a guardian should contract a debt for the benefit of his ward, and

should not pay it, and the guardian, when the creditor came to ask for his debt, should have no other means of making payment but his right to be re-imbursed out of his ward's estate, that a court of equity would, instead of allowing the guardian to take the money, apply it to the payment of his creditor. No question of that kind can, however, arise in this case. The guardian here has no right to re-imbursement. He is the debtor and his ward is the creditor.

But whether *Barnum* v. *Frost* was rightly or wrongly decided, it is clear, I think, that that case cannot be regarded as a precedent for this action. As I have already remarked, the decisive question in that case was, whether or not a creditor of the guardian should be subrogated to the rights of the ward, in order that he might avail himself of the ward's remedies against the sureties of the guardian in the enforcement of a debt which the guardian had contracted for the benefit of his ward. The court was not called upon in that case to measure or contrast the equities of the creditor against the equities of the ward. Indeed, it was not possible for the court to do so, inasmuch as the ward, not being a party to the suit, was not subject to its power. The two judges who constituted a majority of the court, and whose opinions constituted the judgment of the court, thought proper, however, to state, in giving the reasons for their judgment, that the conclusion they had reached would do no harm to the infant. They said that his estate was bound to re-imburse somebody for the debt in question; he had had the benefit of it, and his estate had not paid it; his guardian had not paid it, and was not, therefore, entitled to allowance for it. If the ward sued the sureties of his guardian, he would be entitled to recover the full amount due without deduction for this debt, and that when he had collected the full amount so due, and had it in hand, it would be the clear right of the creditor to look to him for payment. In that condition of affairs, he would have collected money which, in justice, belonged to the creditor, and therefore he could suffer no harm, if the creditor were allowed to proceed directly without circuity of action against the sureties of the guardian. The judgment of the court, in the case cited, stands distinctly on

the ground that to subrogate the creditor to the rights of the ward will do no injustice to the ward. It is obvious, without remark, that an exactly opposite result would follow if this action could be maintained.

The bill must be dismissed, with costs.