40 N.J. Super. 103 (1956)
122 A.2d 185
IN THE MATTER OF THE ESTATE OF HARRY L. KATZ, DECEASED, AND
MINNIE A. KATZ, PLAINTIFF,
v.
HERBERT H. GORSON AND THE FIDELITY UNION TRUST COMPANY OF NEW JERSEY, EXECUTORS OF HARRY L. KATZ, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 11, 1956.
*104 Mr. Herbert H. Gorson, for plaintiffs in estate of Harry L. Katz.
Mr. Charles Danzig (Messrs. Riker, Emery & Danzig, attorneys), for Herbert H. Gorson and Fidelity Union Trust Company, as executors, etc.
Mr. George Warren (Messrs. Warren & Stein, attorneys; Mr. Carl Kisselman and Mr. Daniel DeBrier, of counsel), for Minnie A. Katz.
*105 Mr. Lawrence E. Stern, Deputy Attorney-General (Mr. Grover C. Richman, Jr., Attorney-General), for the State of New Jersey.
Mr. Joseph Tomaselli (Messrs. Malandra & Tomaselli, attorneys), for Marlene D. Katz-Jones.
Mr. James C. Green, guardian ad litem for Harriet Louise Jones, et al.
Mr. Harry Miller (Messrs. Miller & Fishman, attorneys), for Edward and Lillian Margolin and Alfred P. Orleans.
Mr. David M. Perskie (Messrs. Perskie & Perskie, attorneys), for Tisch Hotels, Inc., Ambassador of Atlantic City, Inc., and Preston R. Tisch for Ambassador-Ritz Carlton Properties, a corporation to be formed.
Mr. Harry Cassman (Messrs. Cassman & Gottlieb, attorneys), for The Federation of Jewish Charities of Atlantic City, New Jersey.
HANEMAN, J.S.C.
The above entitled causes were consolidated for trial.
In the matter entitled "Minnie A. Katz v. Herbert H. Gorson, et al." the plaintiff sought generally to establish a contract to execute mutual wills between the plaintiff and her husband, Harry L. Katz, deceased, which said wills had actually been executed. The terms of the alleged mutual wills were entirely different from a subsequent will Harry L. Katz had executed and which had been admitted to probate.
The matter entitled "In the matter of the Estate of Harry L. Katz" sought, in effect, a declaratory judgment concerning various questions which had arisen under the will of Harry L. Katz, as probated, including the approval of the sale of two assets of the estate, i.e., an interest in the Ritz-Carlton and Ambassador Hotels in Atlantic City, New Jersey.
*106 All of the primary issues have heretofore been disposed of. There remains for consideration only the application for counsel fees by three of the parties, i.e., the Attorney-General of the State of New Jersey, Messrs. Perskie & Perskie, attorneys for Tisch Hotels, Inc., Ambassador of Atlantic City, Inc. and Preston R. Tisch for Ambassador-Ritz Carlton Properties, a corporation to be formed, and Mr. Harry Cassman, attorney for the Federation of Jewish Charities of Atlantic City, New Jersey.
The question of fees will be considered in the order above stated.

I.
The request of the Attorney-General of the State of New Jersey.
In the will of Harry L. Katz, as probated, there appeared the following enumerations of the purposes of the charitable trust here involved:
"* * * for religious, charitable, scientific, literary or educational purposes, or to the United States, the State of New Jersey, the County of Atlantic, the City of Atlantic City, or any other subdivision of said County of Atlantic, and no part of said income or principal shall be distributed to or inure to the benefit of any private share-holder or individual (except that reasonable compensation on of propaganda or otherwise attempting to influence legislation. shall be paid to the trustees and/or directors for services actually rendered) and no part of its activities shall include the carrying Likewise, none of said principal or interest shall be distributed to any church other than Jewish Synagogues, although distributions may be made to promote and improve inter-faith relationship."
Grover C. Richman, Jr., as Attorney-General of the State of New Jersey, represented the charitable trusts above set forth. As counsel for these charitable trusts he seeks to obtain a counsel fee, payable to the State of New Jersey, recognizing that under N.J.S.A. 52:17A-1 et seq. he is personally prohibited from obtaining such an allowance.
Counsel fees are, as a general rule, awarded to litigants and not to counsel themselves. The purpose of *107 allowing counsel fees is to reimburse or indemnify the party for some of the expense of the litigation. Eufemio v. McKeown, 10 N.J. Misc. 549 (Ch. 1932).
Costs were not recoverable at common law eo nomine. They were awarded only by virtue of statutory or rule authority. Counsel fees are deemed analogous to costs and as such, in New Jersey, may be awarded only by virtue of a provision of the rules. Liberty Title & Trust Co. v. Plews, 6 N.J. 28 (1950); Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952); Katz v. Farber, 4 N.J. 333 (1950); State v. Otis Elevator Co., 12 N.J. 1 (1953).
Except as modified by statutory or constitutional provision, the functions of our Attorney-General in New Jersey are similar to those exercised by a representative of the Crown at the time of the separation of the colonies. Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943).
Among the common-law duties of the Attorney-General is the enforcement of public charities. The State, as parens patriae, is the guardian of public charitable trusts and enforces them through the Attorney-General, who is the protector of the common interest therein. It is the duty of the Attorney-General to protect the common interest or the general public interest in these trusts. Passaic Nat. Bank & Trust Co. v. East Ridgelawn Cemetery, 137 N.J. Eq. 603 (E. & A. 1946).
It is to be noted in passing that the only authority cited by the Attorney-General involved cases arising in special proceedings in England. Although the cases cited by the Attorney-General show some authority for an allowance of counsel fees to an Attorney-General in England, the general rule there is stated in 1 Daniell's Chancery Pleading & Practice (4th ed.), p. 11:
"It has been said, that as the Queen, by reason of her prerogative, does not pay costs to a subject, so it is beneath her dignity to receive them; * * *."
Although the court had before it an application for a counsel fee to a special counsel for the State, payable to him *108 in his individual capacity in Driscoll v. Burlington-Bristol Bridge Co., supra, the reasoning is apt in connection with the matter sub judice. The court there said:
"While special counsel appointed pursuant to N.J.S.A. 52:17A-13 is not technically a member of the Department of Law, N.J.S.A. 52:17A-3, he is in fact appointed to carry out one of its functions, N.J.S.A. 52:17A-4, and there appears no sound reason why he should be permitted to receive and retain an allowance of counsel fees by a court when the members of the department while performing their official duties are expressly forbidden to do so, both by statute, N.J.S.A. 52:17A-10, and by the Constitution, Art. VII, sec. I, par. 3, Constitution of 1947. In the face of these provisions we are not impressed by the plaintiffs' argument that the practice is to the contrary, for if that is the practice, it should be terminated, not perpetuated."
No New Jersey case has been cited by the Attorney-General and his able and efficient staff. As a matter of fact, he has admitted his inability to locate any such authority. Nor has this court been able to discover any judgment in a proceeding comparable to that now before the court, either in the Court of Chancery or in the Superior Court where such allowance has ever been made. The very absence of any such decision or judgment would lead to the conclusion that it had been generally recognized that an allowance such as here sought should not be made.
The State, through the Attorney-General, is in the position of parens patriae and represents the entire public of this State in connection with all charities. It is performing one of its basic functions, i.e., the protection of the common interest therein. To make an allowance such as here sought would result in casting the burden of litigation involving a charitable trust upon the particular trust so concerned in specific litigation and remove the burden from the public at large.
I presume that by a process of ratiocination we could arrive at the conclusion that although no fee has been paid by the State to any member of the Attorney-General's staff for this particular litigation, some portion of their salaries might be charged or allocated to this litigation. The fallacy *109 in such reasoning is that some special fund may be charged for services involving the general good. The services rendered by the Attorney-General were for the public at large and not for a special private group. This being so, the public at large must stand the burden, since the public receives the benefit.
There does not seem to be any sound reason for causing such a result in charitable trusts any more than in any matter in which the public is represented. To hold otherwise could establish a dangerous and inequitable precedent.
The Attorney-General's application will be denied.

II.
The request of Messrs. Perskie & Perskie.
The above members of the bar represented the so-called "Tisch" interests in connection with the matter entitled "In the matter of the Estate of Harry L. Katz." The phase of the proceeding with which they were concerned was the question of whether their offer for the purchase of the above referred to Ambassador and Ritz Hotels should be accepted, or whether the offer of the "Margolin" interests should be accepted. Although the cross-examination of the witnesses for the Margolin interests by these counsel was helpful in reaching a conclusion as to the propounded question, they were still basically interested in espousing their own clients' antagonistic position. They cannot be said to have technically contributed to the estate.
I conceive, therefore, that I should not exercise my discretion to allow a fee to them. Their application will be denied.

III.
The request of Mr. Harry Cassman.
This counsel entered an appearance, without objection, for The Federation of Jewish Charities of Atlantic City, New Jersey, although the said Federation was not a party to any of the proceedings. His participation was occasioned by the request or suggestion of Herbert H. Gorson, *110 Esq., trustee, and Charles Danzig, proctor of the Harry L. Katz estate, apparently upon the theory that the testator had provided that "none of the principal or interest shall be distributed to any church other than Jewish Synagogues. I suggest, but I do not order, that my trustees and/or directors prefer distributions to Jewish charities and to charities in Atlantic County, New Jersey." All possible beneficiaries of the trust were represented by the Attorney-General, as above noted. Although the participation of this counsel was very helpful, he and his clients must be regarded, under the circumstances, as mere volunteers.
The application of Mr. Harry Cassman for a counsel fee will therefore be denied.
Judgment will be entered accordingly.