65 N.J. Super. 538 (1961)
168 A.2d 250
BANCREDIT, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LYNN BETHEA AND TONY BETHEA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1960.
Decided February 17, 1961.
*541 Before Judges CONFORD, FREUND and KILKENNY.
Mr. John M. Blume argued the cause for plaintiff-respondent (Messrs. Blume & Blume, attorneys).
Mr. Joseph Butt argued the cause for defendants-appellants.
*542 The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by the co-makers of an alleged promissory note from a judgment in favor of the asserted holder in due course. The Union County District Court, sitting with a jury, determined as a matter of law that the note was negotiable, that plaintiff was a holder in due course, and that defendants had not produced sufficient evidence to support their assigned defenses. Judgment was thereupon entered in favor of plaintiff in the amount of $448.99, plus costs. As no stenographic record was made in the trial court, the present appeal is before us on the trial judge's settled state of case. R.R. 1:6-3.
Plaintiff claims that the note, in the amount of $1,110.24, was executed by defendants on November 18, 1958, in conjunction with the purchase of an automobile under a conditional sales contract. Its evidence indicates that plaintiff purchased the note and the contract for $650 from the seller of the automobile, Chippy's Auto Mart, Inc.; that defendants expressly consented, in an addendum to the contract of sale, to the assignment of Chippy's rights to plaintiff; that the note and contract called for payment in 24 equal installments of $46.26 each, and that defendants were given a coupon book with a schedule of payments; that defendants made three payments  in December 1958 and in January and February 1959  and thereafter defaulted, causing plaintiff to repossess the vehicle and dispose of it at a public sale which yielded proceeds of $350; and that after credits had been made for amounts already paid, the sum of $448.99, including attorney's fee, was due and owing on the note.
Defendants asserted that the instrument had been procured by fraud. They claimed that material misrepresentations were made as to the nature and character of the instrument they signed, and that the condition of the subject automobile was falsely represented. It was also alleged that defendant Lynn Bethea was an infant at the time of the agreement and that the note is therefore unenforceable as to him. The testimony of the defendants, who are father *543 and son, was that they had gone to Chippy's Auto Mart, Inc., for the purpose of purchasing a used car for Lynn. Upon expressing interest in a 1955 Chevrolet, they were informed that the price of the automobile was $1,195, including a trade-in allowance of $250, and that an application for a loan in the sum of $500 would have to be made to cover the down-payment on the car. Accordingly, a printed note form, with the amount blank, was signed by both defendants, in addition to the sales contract and the attached consent to assignment.
Defendants contend that a jury question was presented as to their defenses of fraud and the claim of infancy raised by Lynn Bethea. They also argue that plaintiff has not shown itself to be a holder in due course and is therefore subject to all defenses, real and personal, which defendants may have with respect to the instrument.
In regard to the latter contention, we note that defendants have not produced any evidence to rebut the prima facie presumption that every holder is a holder in due course. R.S. 7:2-59. Having failed to offer proof that any of the statutory conditions of a holder in due course, R.S. 7:2-52, did not exist at the time plaintiff received the instrument, they cannot successfully contest Bancredit's status in this respect. Crown Capital Corporation v. Broderick, 130 N.J.L. 198 (Sup. Ct. 1943). Even if defendants could ultimately show that the payee's title was defective, thereby shifting the burden of proof to plaintiff, Fifth Ward Savings Bank v. First National Bank, 48 N.J.L. 513, 517 (E. & A. 1886); Budget Corp. of America v. De Felice, 46 N.J. Super. 489, 492 (App. Div. 1957); see New Jersey, Study of the Uniform Commercial Code (Nov. 1960), § 3-307(2), especially comment (1), the latter's uncontradicted evidence of the regularity of its acceptance of an instrument complete in all material respects constituted an adequate discharge of that burden. See West Side Trust Co. v. Krug, 117 N.J.L. 102 (E. & A. 1936); B.A.C. Corp. v. Cirucci, 131 N.J.L. 93 (Sup. Ct. 1944).

*544 I.
As a holder in due course plaintiff is, of course, immune to all personal defenses of the maker against the payee, including that of fraud in the inducement Davis v. Clark, 85 N.J.L. 696, 698-699 (E. & A. 1914). Therefore, to the extent that defendants' assertion of fraud is grounded in the alleged misrepresentations of the payee's agent with respect to the quality and condition of the automobile, it cannot successfully be raised against plaintiff.
Defendants, however, relying on New Jersey Mortgage and Investment Co. v. Dorsey, 60 N.J. Super. 299 (App. Div. 1960), affirmed 33 N.J. 448 (1960), urge the real defense of fraud in the factum and insist that the evidence is sufficient to warrant a jury finding that they were unaware that the instrument they were signing was a negotiable note. We consider the contrary inference to be the compelling one. The proofs leave no doubt that defendants knew they were signing a negotiable instrument and that their misconception, if any, was as to the amount of their obligation. The testimony of Tony Bethea is illustrative:
"Q. What agreement did you enter into?
A. My son went down to buy a car. Chippy asked me to sign papers to borrow $500. He needed $500 to pay down on the car. That afternoon I went down there and he said * * *
Q. (Mr. Gehrie interrupting) How do you know Chippy?
A. I have been doing business with him for 15 years. He said `Will you sign the papers so your son will get $500?' I signed a paper to get $500 from Beneficial Loan. It was for Lynn to get a car.
Q. When you signed this paper you thought you were signing for a loan?
A. I know I signed it for one loan but not this one here."
The younger Bethea was presumably present at the time his father signed the note, and undoubtedly signed with a similar understanding; at least there is no contrary testimony. While the record is bare of any testimony as to his precise comprehension of what he was signing (he admitted having signed both the note and the contract, but denied that the instruments were filled in when he signed them), *545 the circumstances surrounding the execution of the note and contract, the receipt of a coupon book, and the transfer of the automobile strongly suggest that, at best, he should have known that he was entering into a promissory monetary arrangement. Young Bethea conceded his ability to read and write, but we need not determine whether his literacy is in itself sufficient to estop him from asserting this defense. See Zier v. Eastern Acceptance Corp., 61 A.2d 106, 108 (Mun. Ct. App. D.C. 1948); United States v. Castillo, 120 F. Supp. 522, 523-524 (D.C.D.N.M. 1954). The maker's freedom from negligence is an integral part of the defense of fraud in the factum, and our Supreme Court has held, in New Jersey Mortgage and Investment Co. v. Dorsey, supra, 33 N.J., at p. 451, that the burden of establishing lack of negligence is upon the maker. The proofs indicate an utter failure on the part of young Bethea to meet that burden. See Joseph Heimberg, Inc. v. Lincoln National Bank, 113 N.J.L. 76 (Sup. Ct. 1934).
The defense of fraud in the factum is not available to a maker who knowingly creates a negotiable instrument but leaves the amount blank on the understanding that a lesser sum will be inserted than subsequently appears on the note in the hands of a holder in due course. The maker has not, in this situation, been misled as to the character of the instrument he is creating, but only as to the extent of his obligation. His defensive assertions are grounded in deception as to the terms of his commitment, not in ignorance of its quality. New Jersey Mortgage and Investment Co. v. Dorsey, supra, 60 N.J. Super., at p. 302. His defense is one of fraud in the inducement, effective only against the misleading payee and those successors to his interest who do not occupy the protective status of holder in due course. Cf. Howard v. Trusco Finance Co., 87 Ga. App. 509, 74 S.E.2d 379 (Ct. App. 1953); Maloney v. Central Finance Co., 18 La. App. 108, 137 So. 353 (Ct. App. 1931); see Annotation 44 A.L.R.2d 8, 39 (1955).
*546 The condition of the proofs was such as not to present a jury issue on either the nature of the fraud, or the negligence of the maker of the note. The defense of fraud in the factum was properly rejected by the trial judge as a matter of law.
The aforementioned conclusions are grounded in our Negotiable Instruments Law, under which unauthorized completion of a partially blank instrument which is delivered to the payee or holder is only a personal defense. R.S. 7:2-14; Cinema Circuit Corp. v. Merrill Amusement Corp., 121 N.J.L. 216 (Sup. Ct. 1938). The anomalous rule that non-delivery of an incomplete instrument constitutes a real defense, R.S. 7:2-15; see Budget Corp. of America v. De Felice, supra, 46 N.J. Super., at p. 493; also see criticism of this rule and proposed change in New Jersey, Study of Uniform Commercial Code, supra, § 3-305, comment (1), § 3-115, especially comments (2) and (3), § 3-407 (3), is not here applicable, as the note and contract were undoubtedly delivered by defendants to the payee, Chippy's. Defendants' interposition at this point, to the effect that the payee's fraud was such as to preclude effective delivery of the incompleted instrument, thereby invoking R.S. 7:2-15, was considered and rejected in New Jersey Mortgage and Investment Co. v. Dorsey, supra, 60 N.J. Super., at p. 306. Failure of the maker to establish either fraud in the execution or freedom from negligence debases entirely the merit of such a contention.
Since the blanks were filled in by the payee, the question of the latter's authority to do so becomes irrelevant in a suit against the maker by a holder in due course. Not only did the instant plaintiff have the right to assume that the payee filled in the blanks in accordance with its authority, but even knowledge, if such existed, on the part of Bancredit that the instrument contained blanks when executed did not impose on the latter a duty to make further inquiry as to the payee's authorization. First National Bank of Springfield v. Di Taranto, 9 N.J. Super. 246, 250-251 *547 (App. Div. 1950); see 8 Am. Jur., Bills and Notes, § 418, pp. 157-158.
We therefore consider defendants' own proofs to demonstrate conclusively that there was an utter absence of fraud in the execution of the note under consideration.

II.
With respect to the obligation of Lynn Bethea, who was slightly over 20 years of age at the time he signed the note and contract and received delivery of the automobile, error is assigned in the trial court's rejection of his defense of infancy. The trial judge held that the vehicle was, as a matter of law, a "necessity," as it "transported him to his place of employment where he was compensated for his services."
Whether infancy is a real or personal defense is generally dependent on the contract law of the jurisdiction in question. Universal Credit Co. v. Hibbard, 273 Ky. 597, 117 S.W.2d 583 (Ct. App. 1938); see New Jersey, Study of Uniform Commercial Code, supra, § 3-305 (a), comment 4. The more usual view, that infancy is a real defense, rests on the premise that one who lacks capacity to contract cannot be said to have bound himself irrevocably to anyone, even to a holder in due course. Murray v. Thompson, 136 Tenn. 118, 188 S.W. 578, L.R.A. 1917B, 1172 (Sup. Ct. 1916); see Britton, Bills and Notes (1943), § 126, p. 548; 8 Am. Jur., Bills and Notes, § 614, p. 328. Our courts have by inference followed this view and have held that where the consideration does not consist of a necessary, a promissory note given by an infant is voidable at the infant's election, the latter's incapacity constituting a bar to his liability unless he ratifies the obligation upon the attainder of full age. Majaika v. Jamison, 115 N.J.L. 358 (Sup. Ct. 1935); cf. Notaro v. Notaro, 38 N.J. Super. 311, 314 (Ch. Div. 1955).
The general contract rule has been incorporated into the Sales Act, in R.S. 46:30-8 (made applicable to the instant *548 transaction by R.S. 46:30-7 and the silence of the Conditional Sales Act, R.S. 46:32-1 et seq.), which has also preserved the common law requirements that (1) where his contract is for necessaries, a disavowing infant is liable for the reasonable price thereof, and (2) whether the article transferred qualifies as a necessary depends not only on the nature of the article but also on the actual need of the infant at the time he receives delivery. Reading v. Wilson, 38 N.J. Eq. 446, 448 (Ch. 1884). See generally, New Jersey, Study of Uniform Commercial Code, supra, § 1-103.
Within the ambit of the Sales Act, "necessaries" are defined as "goods suitable to the condition in life of such infant or other person, and to his actual requirements at the time of delivery." R.S. 46:30-8. While an automobile has not generally been classed as a necessary, in accordance with the principle that articles used for pleasure or for business advantage are not bodily or mental essentials, Chambers v. Dunmyer Chevrolet Co., 74 Ohio App. 235, 58 N.E.2d 239, 240 (Ct. App. 1943); see La Rose v. Nichols, 91 N.J.L. 355, 357 (Sup. Ct. 1918), reversed on other grounds sub nom. La Rosa v. Nichols, 92 N.J.L. 375 (E. & A. 1918); Annotations 78 A.L.R. 392 (1932), recent decisions have espoused the more realistic view that an occupational accessory may well be a link in the chain of physical survival. See Sykes v. Dickerson, 216 Ark. 116, 224 S.W.2d 360 (Sup. Ct. 1949). For example, in Ehrsam v. Borgen, 185 Kan. 776, 347 P.2d 260 (Sup. Ct. 1959), the infant, at the time of contracting, was over 20 years of age and apparently supported himself. He owned his own automobile, driving approximately 20 miles to and from work each day. It was found (347 P.2d, at p. 263, supra) that "in order for defendant to hold his job and earn a livelihood, he had to get to and from work and, under such conditions, the arrangement made between the parties was necessary insofar as defendant was concerned." The Kansas court discussed the evolution of the automobile as a concomitant to modern living:
*549 "It might be said that earlier in the history of our country, when industry was centralized in cities or industrial communities where housing was adequate and public transportation, by way of the street car, the bus or the community train was available to all, private transportation was not necessary for one getting to and from his work. However, since World War II there has been a tremendous growth in our country's population, and in this highly industrial age, where industry has the tendency to decentralize and move to less populated or rural communities within which there is a shortage of housing and very little, if any, public transportation available, the worker is, as a result, required to commute long distances to and from his place of employment. We are, therefore, of the opinion that private transportation for the worker is now a necessity and an agreement made by a minor for such transportation is binding and not subject to disaffirmance for the reasons of minority alone." (347 P.2d, at pp. 263-264, supra.)
We are in accord with the recognition, implicit in these holdings, that modern transportation habits and the definitional flexibility of "necessary," dependent as the term is upon the social position and situation in life of the minor, see Spaulding v. New England Furniture Co., 154 Me. 330, 147 A.2d 916 (Sup. Jud. Ct. 1959), may well combine to dictate that, under certain circumstances, an automobile is sufficiently indispensable to bind an infant who contracts for one. Whether, therefore, the automobile in the case at hand  allegedly used by young Bethea in driving to and from work  is a necessary should have been determined by the jury, taking into account such considerations as the defendant's station in life, his personal need of the vehicle, the type of work in which he is engaged, the travelling distance involved in going to and from his job, convenient alternative means of transportation, and the terms of his contract of employment. See 43 C.J.S. Infants § 78 b, pp. 189-194. Also to be resolved by the jury is the question of whether, considering young Bethea's possession of another automobile (the one traded in) and the apparent willingness of his father to help him, the infant was in "actual need" of the car purchased. Finally, even if the automobile is found to be a necessary, the infant's liability must be limited to the reasonable value thereof; defendants have claimed all along *550 that the worth of the vehicle is considerably less than the sales price.
We recognize that, in general, the burden of proving infancy is on the one who asserts it in defense. See 27 Am. Jur., Infants, § 145, p. 862. However, once the defendant effectively demonstrates his infancy at the time of contracting, the party seeking to recover for materials furnished has the burden of proving both that the articles supplied in fact constituted necessaries, and that the infant was in "actual need" of them. Robertson v. King, 225 Ark. 276, 280 S.W.2d 402, 404, 52 A.L.R.2d 1108 (Sup. Ct. 1955); Spaulding v. New England Furniture Co., supra, 147 A.2d, at p. 918; see 43 C.J.S. Infants § 117, pp. 330-331. It is also the duty of the creditor to establish the reasonable value of the alleged necessaries. De Woody v. Goss, 86 S.W.2d 194 (Mo. Ct. App. 1935).
The involvement of Tony Bethea, the father, in this contract raises a further issue of fact: whether the agreement was consummated on his sole credit. If the necessaries are not furnished on the infant's credit, the latter is not liable for them. See 2 Williston, Contracts (3d ed. 1959), § 240, p. 51. The burden of proof as to this issue would fall on the infant, since he would be attempting to avoid the liability consequent upon his purchase of the necessaries.
Should the automobile be found not to be a necessary, Lynn Bethea's release from liability on the note is not open to question. It cannot be claimed that he ratified his obligation upon attaining majority, as he in fact disaffirmed before coming of age. Ratification cannot be effectually made until the coming of age. Mechanics Finance Co. v. Paolino, 29 N.J. Super. 449, 456 (App. Div. 1954). Disaffirmance, however, at least with respect to contracts relating to personal property, may occur either during infancy or within a reasonable time after the attainder of full age. Mandell v. Passaic National Bank and Trust Co., 18 N.J. Misc. 455, 459 (Cty. Ct. 1940); 2 Williston, supra, § 235, p. 29. The record indicates that Lynn Bethea reached *551 his twenty-first birthday on September 26, 1959. Inspection of the docket shows that defendants' answer, in which Lynn raised the defense of infancy, was filed with the Union County District Court on July 27, 1959. Disavowal by an infant need not take any prescribed form or ceremony; the filing of the answer prior to the attainment of majority constituted disaffirmance as a matter of law. Bankers' Trust Co. v. Bank of Rockville Center Trust Co., 114 N.J. Eq. 391, 406 (E. & A. 1933); Sacco v. Schallus, 11 N.J. Super. 197, 201 (Ch. Div. 1950).
The factual issues set out above relate, of course, only to the liability of Lynn Bethea. Tony Bethea is primarily bound on the instrument, and the fact that his co-maker may avoid his part in the contract does not affect the adult's liability. Levine v. Mallon Oldsmobile Co., Inc., 127 N.J.L. 197 (Sup. Ct. 1941).

III.
Defendants' final allegation is that the trial judge erroneously allowed a "double attorney's fee" to counsel for plaintiff. After computing defendants' purchase price deficiency, the court added 15% to cover counsel fee, in accordance with the parties' provision in the note that "If any installment of this note is not paid when due, then all installments hereof shall immediately become due and payable at the option of the holder hereof, without notice or demand, and the undersigned hereby agrees to pay all expenses of collection including 15% attorney's fees if placed in the hands of an attorney for collection." At the time the note was executed, such a provision was expressly authorized by N.J.S.A. 17:16B-6(a)(4), permitting counsel fees not exceeding 15% of the default deficiency on a retail installment contract. See Maryland Credit Finance Corp. v. Reeves, 45 N.J. Super. 205, 208 (App. Div. 1957). (The statutory provision has since been repealed, L. 1960, c. 40, p. 162, § 58, and replaced by a new limitation of 20% on the first $500 of any default deficiency and 10% on the excess. N.J.S.A. 17:16C-42(b).)
*552 Upon totalling defendant's liability at $448.99, including the aforementioned allowance, the trial judge proceeded to assess costs. An attorney's fee of 5% of the total judgment was included in this assessment, pursuant to N.J.S. 22A:2-42, providing in relevant part that "There shall be taxed by the clerk of a county district court in the costs against the judgment debtor, a fee to the attorney of the prevailing party of five per centum (5%) of the first five hundred dollars ($500.00) of the judgment * * *."
We find neither inconsistency nor repetition in the court's allowance of both of these amounts. The 15% award was a recognition of the parties' contractual arrangement, its reasonableness sanctioned by statute. It was properly included in the formal judgment. While the amount is designated as "attorney's fees," it is in effect a reimbursement or indemnification of the creditor for estimated legal expenses in effecting collection. In re Katz, 40 N.J. Super. 103, 106-107 (Ch. Div. 1956). It is not conditioned upon the actual institution of suit. Moreover, the obligation created in the note is the property of the holder in due course and not of his attorney. In re Maury, 97 Mont. 316, 34 P.2d 380, 384 (Sup. Ct. 1934); see 7 C.J.S. Attorney and Client § 163, pp. 1020-1021, note 71. The attorney must still depend, for his compensation, on the credit of his client or on prompt attachment of his statutory lien. See N.J.S. 2A:13-5. The 5% allowance, on the other hand, is tied to the successful prosecution of suit in the county district court, and is payable directly to the attorney. As a taxed cost of litigation, it is in the nature of a statutorily authorized penalty against the judgment debtor, saddling him with the burden of compensating the creditor's attorney for the latter's litigational duties. Cf. Katz v. Farber, 4 N.J. 333, 338 (1950); El v. Toohey, 125 N.J.L. 150, 152 (Sup. Ct. 1940), affirmed 125 N.J.L. 510 (E. & A. 1941); Fagliarone v. Consolidated Film Industries, Inc., 20 N.J. Misc. 193, 196 (Cty. Ct. 1942), affirmed 131 N.J.L. 315 (E. & A. 1944).
*553 We are not dissuaded from our position by defendants' reference to Bank of Commerce v. Markakos, 22 N.J. 428 (1956), in which the Supreme Court held unenforceable a provision in a mortgage bond providing a counsel fee upon foreclosure in excess of the schedule of fees set forth in R.R. 4:55-7 (c). As this court pointed out in Maryland Credit Finance Corp. v. Reeves, supra, 45 N.J. Super., at p. 208, the Markakos case dealt with an attempt to contradict contractually a rule of court specifically restricting counsel fees in foreclosures to the schedule set forth. In the instant case, not only was the parties' contractual arrangement expressly authorized by statute, but, as we have outlined, the taxed costs provision, N.J.S. 22A:2-42, was not designed to embrace the subject of the parties' agreement. To accept defendants' argument that the latter statute constitutes the sole barometer of assessed counsel fees would be to render meaningless N.J.S.A. 17:16B-6(a)(4), now replaced by N.J.S.A. 17:16C-42(b), in the greater area of its potential applicability  i.e., actions in the county district courts. We will not impute illogic to the Legislature if a reasonable construction of its intention can be perceived; here, we accept its altogether logical recognition of the distinction between a contractual arrangement to cover any and all legal expenses attendant upon collection, regardless of whether suit is instituted, and a statutory court-imposed cost allowed solely for the prosecution of suit to final judgment.
The judgment of the trial court is affirmed as to defendant Tony Bethea. With respect to defendant Lynn Bethea, it is reversed and remanded solely for a trial of the factual issues relating to the asserted defense of infancy.
So ordered.