## IN THE MATTER OF THE RESIDUARY TRUST CREATED UNDER THE LAST WILL AND TESTAMENT AND CODICILS THERETO OF EDWARD J. GRASSMAN, DECEASED.

Superior Court of New Jersey
Chancery Division Union County

Decided April 5, 1989.

*William C. Connelly* (*Riker, Danzig, Scherer, Hyland & Perretti*).

*William P. Malloy* (Deputy Attorney General).

KENTZ, P.J.Ch.

This is a motion submitted by the Attorney General of New Jersey as a representative of the public interest in the charita-

ble bequests of Edward J. Grassman. The Attorney General seeks an order appointing, at trust expense, an accountant to audit the first intermediate account and supporting documents of the charitable residuary trust created under the Last Will and Testament of Edward J. Grassman.

In support of the motion the certification of Deputy Attorney General William Malloy is submitted.

The basic operative facts are as follows:

The Attorney General is an interested party in the proceeding to settle the account of the trustees under the charitable residuary trust of Edward J. Grassman. This motion for an accounting at trust expense is prompted by the size of the trust, the market value of the trust assets, and the complexity of the trust's financial and business activities.

The Attorney General maintains that during the over seven years covered by this accounting, August 1, 1979 through December 31, 1986, the trust had major interests in several closely held corporations that were liquidated or sold. In addition, six substantial properties which the trust owned or in which the trust had an interest were sold. Two properties were sold at a loss. The total sale price of the lands approximated $1,474,500. Moreover, the Attorney General contends that numerous business and financial decisions of great complexity and subtlety were made by the trustees, evidenced by their description of the decedent's business activities as "complex" and "interwoven" in their joint affidavit of services. Consequently, the Attorney General states that as the sole party in interest, it is charged with the responsibility of assuring that the trust has been properly managed; however, the Attorney General does not have the personnel or experience to adequately review the accounting and supporting documents of the $30 million dollar trust. No other entity is performing such an audit. The Attorney General contends that the procedure utilized by the Clerk of the Court pursuant to *R.* 4:87–5 does not go beyond the accounting itself to look at supporting documents much like a

certified public accountant would. Moreover, the focus of the Clerk is to see only that the accounting is internally accurate and that the applicable statutes are complied with.

The Attorney General maintains that an accountant should be appointed to audit the first immediate account and supporting documents of the Grassman trust to aid the Attorney General in the review. The Attorney General further maintains that having the trust pay for this audit out of income will cause no harm since the charitable beneficiaries will be paying an expert to protect their interests regardless.

In opposition to the motion the trustees/plaintiffs (hereinafter trustees) submitted a legal brief which contends that as counsel fees cannot be awarded an Attorney General while performing duties as *parens patriae*, neither should costs and fees be withdrawn from the trust estate to pay for a supplemental accounting. In support of this contention the trustees rely on the language of *In Re Katz' Estate*, 40 *N.J.Super.* 103 (Ch.Div.1956). The *Katz* court focused on a request by the Attorney General for an award of counsel fees to be taken from the trust estate. The court denied the request noting that where the Attorney General appeared as counsel for charitable trusts, counsel fees would not be awarded to the State for services because the Attorney General acts for the public at large and the public, not the trust, should stand the expense. *Id.* at 108.

The trustees contend further that the services to be rendered by the Attorney General in this matter involve essentially legal services and not the services of an accountant; thus, there is no need for the appointment of a certified public accountant to review specific acts and transactions that an attorney can ably manage.

Finally, the trustees maintain that they have already paid the sum of $18,705.80 to the Clerk of the Superior Court as a fee for the Clerk's audit of the first intermediate account. The audit was conducted pursuant to *R.* 4:87–5 and the costs borne by the trustees pursuant to *N.J.S.A.* 22A:2–15. The trustees

assert that to impose such a second audit fee upon this trust to duplicate the work already performed by the Clerk of the Court at the mere request of the Attorney General is unfair and unreasonable.

Based upon the foregoing, the trustees request that the Attorney General's motion for an accounting at trust expense be denied.

Among the common-law duties of the Attorney General is the enforcement of public charities. The State, as *parens patriae*, is the guardian of public charitable trusts and enforces them through the Attorney General, who is the protector of the common interest therein. It is the duty of the Attorney General to protect the common interest or the general public interest in these trusts. *Katz*, 40 *N.J.Super.* at 107; citing *Passaic Nat. Bank & Trust Co. v. East Ridgelawn Cemetery*, 137 *N.J.Eq.* 603 (E. & A.1946).

As indicated, the *Katz* court denied the request of the Attorney General for counsel fees payable out of the charitable trust therein involved. In doing so, the court noted, as is the case under the present circumstances, that the Attorney General cited no case in support of the application. More importantly, in the present case, as in *Katz*, the Attorney General is representing the entire public of New Jersey in performing one of the basic functions of the office, to wit: the protection of the common interest in a charitable trust. *Katz* acknowledged that to make such an allowance would result in casting the burden of litigation involving a charitable trust upon the particular trust so concerned in specific litigation and remove the burden from the public at large. *Katz*, 40 *N.J.Super.* at 108. In connection with the Attorney General's request, the *Katz* court noted that the services rendered by the Attorney General "were for the public at large and not for a special group," indicating that no rationale existed for charging the trust fund itself for payment of those services. *Id.* This being so, "the public at large must stand the [financial] burden since the public receives the benefit." *Id.*

I find that the *Katz* reasoning is legally as well as equitably sound and should be followed under the circumstances existing in this matter. The trustees have previously paid the sum $18,705.80 from the trust estate to the Clerk of the Superior Court as the fee for the audit and review of the first intermediate account. The audit was conducted in accordance with the mandate of *R.* 4:87–5. No other audit, accounting or review is required under the court rules or by statute. I find that a second audit or accounting may be accomplished at the discretion of the Attorney General but in no event should the trust be compelled to pay for it. To do otherwise would be fundamentally unfair and in derogation of the *Katz* reasoning. The trust should not be subjected to a second audit fee after it has paid the only audit fee required. The public at large must sustain this burden, not the beneficiaries of the charitable trust, since the public receives the benefit. *Id.* at 109. There is no sound reason at law or in equity for finding otherwise.

Accordingly, based upon the foregoing, I am granting the motion of the Attorney General insofar as it seeks the court's authorization to conduct a second audit. The motion is denied, however, with respect to the payment of costs, fees, and expenses from the trust estate to accomplish the supplemental audit.