**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3795-21

NEWARK HOUSING AUTHORITY CLAREMONT,

Plaintiff-Respondent,

v.

TY-TANIESHA WILDER,

Defendant-Appellant.

___________________________

Submitted November 9, 2023 – Decided December 4, 2023

Before Judges Firko & Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-004866-21.

Rutgers Economic Justice and Public Benefits Clinic, attorneys for appellant (Victor Manuel Monterrosa Jr., of counsel and on the briefs; Sarah Choudhry, and Nicholas Willette, appearing pursuant to Rule 1:21-3 (b), on the briefs).

Ehrlich, Petriello, Gudin, Plaza & Reed, PC, attorneys for respondent (Nicholas Mesarick, on the brief).

PER CURIAM

This appeal stems from a June 27, 2022 eviction from federally subsidized housing. Defendant Ty-Taniesha Wilder and her three minor children lived in plaintiff Newark Housing Authority Claremont's multi-unit housing complex located in Newark under Section 8 regulations, 24 C.F.R. §§ 982.1 to -982.643, promulgated by the United States Bureau of Housing and Urban Development (HUD). Defendant is the head of household and primary voucher holder. 24 C.F.R. § 982.302(a).

Plaintiff initiated a removal action under the Anti-Eviction Act, N.J.S.A. 2A:18-61.1(d) and (e), on the basis of breach of lease because defendant failed to annually re-certify her income and expenses as required under Section VII(c)(1) and (2) of the lease. We affirm.

I.

The essential facts are not in dispute. At the time this action commenced, plaintiff owned the residential housing complex. On April 20, 2018, defendant entered into a residential lease agreement with plaintiff. Section 10.2 of the lease requires the composition of the household to be stated as approved by plaintiff, in conformity with 24 C.F.R. 966.4(a)(1)(v), which requires the family to "request [plaintiff's] approval to add any other member as an occupant of the unit." Defendant was identified as head of household, and two of her three minor

children, D.W.[1] and S.H., were listed on the lease as members of defendant's household authorized to occupy the premises. The lease is renewed annually by a rider that must be signed by all adult household members. T.M. was born while defendant was occupying the unit. Defendant's mother was also living at the premises as an unauthorized occupant.

HUD subsidizes the rent in plaintiff's building. Plaintiff offers families the choice between a flat rent and an income-based rent. Section 12.3 of the lease incorporates a HUD-required certification; to retain their subsidy, tenants must annually certify information relating to income, expenses, and occupancy. Plaintiff reexamines the families' incomes once a year if income-based rent is paid, as in the matter under review.

Plaintiff conducts annual re-certifications by interviewing adult members and verifying their income and asset information, deductions, family size, and composition. Failure to properly certify the information results in a breach of the lease and termination of assistance. The HUD Handbook section 7-8(A) provides, "In general, re[-]certification processing should be complete by the re[-]certification anniversary date." When a tenant is out of compliance with

[1] We use initials to protect the identity of the minor children. D.W. turned eighteen years of age in May 2023 while this appeal was pending.

the re-certification requirements, the tenant is projected to be evicted. HUD Handbook section D(3)(b).

Between December 2020 and February 2021, defendant ignored three re-certification notices, which were personally delivered and mailed to her. On December 10, 2020, the first re-certification letter was sent to defendant with a scheduled appointment. On February 10, 2021, a second re-certification letter was sent to defendant and stated: "Failure to appear for this re-scheduled appointment may result in termination of your lease and eviction." On February 19, 2021, a third re-certification letter was sent to defendant and stated: "You failed to attend two scheduled re-certification appointments. A third re-certification appointment is scheduled for you on February 22, 2021, at 10:00 a.m." Attached to the third letter was a notice to cease and notification that plaintiff had commenced an action to terminate the lease.

On April 12, 2021, after the notices were sent, defendant was arrested and incarcerated at the Essex County Correctional Facility where she is currently detained. Defendant's mother continues to reside in the unit with the children.

It is undisputed defendant failed to re-certify and missed the in-person re-certification meetings scheduled before and during the COVID-19 pandemic and prior to her incarceration. During that time, plaintiff refused to accept rent on

two occasions—on or about April 22, 2021, and May 20, 2021—from D.W., who is defendant's eldest daughter and a remaining occupant at the unit. D.W. was sixteen years old at the time and went to plaintiff's management office to pay the rent.

Thereafter, defendant sought to have D.W. become head of household, perform the re-certification, and sign a new lease in her stead while she was incarcerated and her criminal case was pending, citing 24 C.F.R. § 982.308(a).[2] Head of household "means the adult member of the family who is the head of household for purposes of determining income eligibility and rent." 24 C.F.R. § 5.504. Plaintiff declined to permit D.W. to become head of household because she was not eighteen years old as required under its Admissions and Continued Occupancy Policy (ACOP) and 24 C.F.R. § 5.902, which defines an adult "as a person who is [eighteen] years of age or older. . . ." ACOP defines "head of household" as

> the adult member of the family who is considered the head for purposes of determining income eligibility and rent. The head of household is responsible for ensuring that the family fulfills all of its responsibilities under the program, alone or in conjunction with a co-head or

[2] 24 C.F.R. 982.308(a) addresses a tenant's legal capacity and provides: "The tenant must have legal capacity to enter a lease under State and local law. 'Legal capacity' means that the tenant is bound by the terms of the lease and may enforce the terms of the lease against the owner."

> spouse. [24 C.F.R. 5.504(b)]. The family may designate any qualified adult family member as the head of household. The head of household must have the legal capacity or guardianship to enter into a lease under state and local law. A minor who is emancipated under state law may be designated as head of household.
>
> [(emphasis added).]

In February 2021, plaintiff again served notices to cease, and to quit, followed by filing an eviction complaint against defendant. On April 30, 2021, the lease was terminated. The matter was scheduled for trial on January 4, 2022, and adjourned to January 25, 2022. On that date, defendant filed a motion to dismiss the complaint. The matter was adjourned until May 19, 2022.

On May 19, 2022, defendant's daughter D.W., a non-party to the litigation, joined in the motion to dismiss the complaint and sought to be authorized to re-certify and assume the lease. At the time of the motion hearing, D.W. was seventeen years old, had a part-time job, and offered to continue paying the rent. Defendant remained incarcerated. Plaintiff opposed the motion to dismiss on the grounds that D.W. was not a named party to the suit, and she lacked the legal capacity to enter into a contract or lease because she was not eighteen years old.

Following oral argument, the court rendered an oral decision and denied the motion to dismiss. The court found D.W. was not a tenant and was not of

sufficient age under N.J.S.A. 9:17B-1(d)[3] to contract on her own behalf. Because defendant had not responded to the complaint, she was in default and a holdover tenant. The court highlighted non-payment of rent was not the dispositive issue. The court found D.W. could not become the leaseholder and re-certify with plaintiff as to her income.

The court held defendant was subject to eviction under N.J.S.A. 18-61.1(d) and (e) as a result of her failure to properly re-certify and comply with the lease terms. The court observed that defendant was arrested after the three notices were served upon her but before the lease termination date. Thus, defendant had the ability to attend the re-certification meetings and re-certify. A memorializing order was entered, and a proof hearing was ultimately scheduled for June 27, 2022.

---

[3] N.J.S.A. 9:17B-1 provides:

> The Legislature finds and declares and by this act intends, pending the revision and amendment of the many statutory provisions involved, to:
>
> . . .
>
> (d) abolish the right of a person between the ages of 18 and 21 years to disaffirm and be relieved of contractual obligations by reasons of age.

At the proof hearing, the court considered the testimony of Tashana Taylor, plaintiff's assistant asset manager. Taylor confirmed that defendant failed to comply with the yearly re-certification process and did not update her required information. No other witnesses testified. A judgment of possession was entered against defendant. Plaintiff then sought a warrant of removal.

In response, defendant filed an order to show cause seeking to vacate the judgment of possession, or in the alternative, for a hardship stay. The court granted the application and stayed execution of the warrant of possession pending this appeal.

Defendant presents the following sole argument for our consideration: the court lacked jurisdiction to grant an order of possession and a warrant of removal because the alleged breach of lease was neither a substantial nor a continuous act, failing to meet the statutory preconditions set forth in the Anti-Eviction Act, N.J.S.A. 2A:61.1 to -61.12. We disagree.

II.

We utilize a deferential standard in reviewing factual findings by a judge. Balducci v. Cige, 240 N.J. 574, 595 (2020). In an appeal from a non-jury trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp.

of Ocean, 220 N.J. 239, 254 (2015). "The general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Issues of law, including the interpretation of contracts, statutes, and regulations are reviewed de novo. Serico v. Rothberg, 234 N.J. 168, 178 (2018).

Defendant asserts the court: (1) erred by not allowing D.W. to re-certify in place of defendant; (2) erred by finding that D.W., although a minor, had no legal right to contract for housing; and (3) erred by concluding D.W. could not cure the breach of lease that was the basis of the asserted good cause for eviction. Defendant also contends her mother can re-certify in addition to D.W.

A.

Multiple sources of law govern whether a tenant receiving a Section 8 subsidy is removable. First, federal regulations specify termination of a tenancy in a subsidized project is prohibited except in the case of: "(1) [m]aterial noncompliance with the rental agreement, [or] (2) [m]aterial failure to carry out obligations under any state landlord and tenant act . . . ." 24 C.F.R. § 247.3(a). "Material noncompliance" occurs in the event of:

> (1) One or more substantial violations of the rental agreement;

> (2) Repeated minor violations of the rental agreement that . . . [h]ave an adverse financial effect on the project;
>
> (3) If the tenant: (i) [f]ails to supply on time all required information on the income and composition, or eligibility factors, of the tenant household, as provided in 24 C.F.R. part 5; or (ii) [k]nowingly provides incomplete or inaccurate information as required under these provisions; and
>
> (4) Non-payment of rent or any other financial obligation due under the rental agreement (including any portion thereof) beyond any grace period permitted under State law, except that the payment of rent or any other financial obligation due under the rental agreement after the due date, but within the grace period permitted under State law, constitutes a minor violation.
>
> [24 C.F.R. § 247.3(c).]

On appeal, defendant contends plaintiff was required to inquire about her "extenuating circumstances" for missing the re-certification dates. Relying on the HUD Handbook § 7-8(D)(4)(A), defendant argues "extenuating circumstances" are those "beyond the tenant's control." We are unpersuaded.

The HUD Handbook § D(4)(a) lists "extenuating circumstances," as including but not limited to:

> (1) Hospitalization of the tenant.

(2) Tenant out of town for a family emergency (such as the death or severe illness of a close family member).

(3) Tenant on military duty overseas.

The record does not reveal and defendant does not set forth any facts in her merits brief to justify "extenuating circumstances." Moreover, the record shows defendant did not respond to three re-certification notices that were served upon her in the months preceding her arrest and incarceration. We note that § 12.23 of the lease lists "incarceration" as an acceptable reason for missing a deadline to re-certify. But as we noted previously, defendant's incarceration occurred after the three re-certification notices were sent. The COVID-19 pandemic had ended by that time, and defendant gives no explanation for her failure to not re-certify the lease before she was incarcerated. Defendant has not presented any extenuating circumstances that were beyond her control based on our review of the record and thus, we reject her argument. Defendant's breach of the lease is substantial and continuous.

Here, defendant had been a participant in the Section 8 program since 2018. No evidence was proffered by defendant to show she made any effort to communicate with plaintiff about re-certification. And, nothing was presented by defendant to establish that the re-certification request was suspended during the COVID-19 pandemic. It is immaterial that D.W. is seeking to re-certify with

the terms of the lease and rent amount defendant agreed to because the lease was properly terminated.

B.

We next address the question of whether D.W.'s minority status affected her ability to assume the status of head of household from defendant, re-certify, and cure the breach of lease. On appeal, defendant reiterates the argument she made to the court that there is "no federal or state statute which placed any age limit, or minimum age requirement" on being considered a "remaining member of the tenant family," citing Carteret v. Hous. Auth. v. Gilbert, 301 N.J. Super. 109, 112 (Law Div. 1997) and an unpublished Appellate Division decision, which is not precedential.[4]

As the trial court correctly found, Carteret is factually distinguishable because the breach was a failure to pay rent, not a failure to certify eligibility for a subsidy. In Carteret, the local Housing Authority and the tenant entered into a month-to-month tenancy arrangement with a Section 8 housing subsidy. Id. at 110. The named tenant's daughter, Samantha, also resided in the subsidized apartment. Id. at 110-11. At some point during the leasehold, the

[4] "No unpublished opinion shall constitute precedent or be binding upon any court." R. 1:36-3.

mother was incarcerated and failed to pay her monthly rent; the local Housing Authority moved to evict the mother for nonpayment. Ibid.

Samantha, who was seventeen years old at the time, occupied the unit with her two-year-old child; Samantha was listed as an "occupant" on the lease agreement but was not a named "tenant." Ibid. When Samantha learned of the warrant of removal, she wrote a letter to the trial court seeking a stay and a hearing. Id. at 110. The trial court subsequently vacated the judgment of possession. Ibid. The trial court framed the issue as follows: "may a public housing authority compel a member of a tenant's family who is underage to move from an apartment, because no adult resides there?" Id. at 109.

In addressing the question, the trial court noted that "[t]here appears to be no legislative authority which establishes any minimum age limit for the occupants of federally-subsidized housing." Id. at 112, 693. The court thus determined that Samantha qualified as a "remaining member of a tenant family" as outlined in 42 U.S.C.A. 1437A(B)(3)(A) and that "no federal or state statute . . . places any age limit, or minimum age requirement, on the 'remaining member of the tenant family'" and was allowed to remain in the apartment after her mother breached the lease by not paying rent. But here, defendant breached the lease before she was incarcerated by failing to follow the re-certification

requirements. The court correctly found D.W. could not re-certify on defendant's behalf.

The federal regulations define tenant as an "adult person . . . who resides in the unit, and who is the remaining head of household." 24 C.F.R. § 966.53; head of household as "the adult member of the family who is the head of household for purposes of determining income eligibility and rent," 24 C.F.R. § 5.504; and an adult as "a person who is [eighteen] years of age of older," 24 C.F.R. § 5.902. Because D.W. was not an adult as defined by the C.F.R., as eighteen or older, she could neither qualify as a tenant nor head of household. Therefore, D.W. could not assume defendant's lease where defendant remained the tenant and was head of household but failed to re-certify.

In addition, § 12.7 of the lease states:

> In order for a minor to continue to receive assistance as a remaining family member, the court has to have awarded emancipated minor status to the minor or [plaintiff] has to verify that Social Services and or the Juvenile Court has arranged for another adult to be brought into the unit to care for the child[ren] for an indefinite period of time.

It is undisputed that D.W. was not emancipated. And defendant's mother was living in the household in violation of the lease and did not request to be added as a member of the household. Absent approval of plaintiff and a court

order from the Family Part that defendant's mother would be caring for the children, the lease could not be renewed. Moreover, § 12.10 of the lease requires a tenant family to send a written request to plaintiff for the purpose of adding a new member.

Defendant raises a situation of necessities argument in her merits brief as a justification to allow D.W. to re-certify on behalf of defendant, citing Bancredit, Inc. v. Bethea, 65 N.J. Super. 538, 549 (App. Div. 1961). We are unpersuaded.

In Bancredit, a father and minor son executed a promissory note to purchase an automobile for the minor. Id. at 542. They defaulted on the payments. Ibid. We recognized that a contract involving a minor is voidable at the minor's election. Id. at 547. We reversed and remanded on the issue of whether the promissory note bound the minor, which turned on whether the automobile was a necessity. Id. at 553.

Unlike Bancredit where the minor was a party to a contract and the issue was enforceability of that contract, which depended on whether the automobile was a necessity at the time of contract, D.W. was not a party to the lease agreement, and the issue is not enforceability. Instead, defendant raises the issue of whether D.W. could re-certify on her behalf. Defendant has not cited any

statute case law to support her argument, and we are not aware y to support defendant's argument.

I hereby certify that the foregoing is a true copy of the original on file in my office.
CLERK OF THE APPELLATE DIVISION

We stress that D.W. was not eighteen years old at the time re-certification was required. The federal regulations regarding a tenant's legal capacity to obtain Section 8 housing—24 C.F.R. § 982.308—defer to state and local laws to define what capacity means. D.W. could not re-certify because she was not an adult—age eighteen—and a necessities analysis does not come into play.

In sum, defendant unquestionably failed to comply with the re-certification process despite being validly served with notice on multiple occasions prior to her incarceration. And D.W. could not re-certify on defendant's behalf because she was not eighteen years old at the time re-certification was required and could not have qualified as a tenant or head of household.

We conclude that the remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

The judgment of possession is affirmed, and the stay of eviction is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.
CLERK OF THE APPELLATE DIVISION